**Larry HANSON, Plaintiff and Appellee,**

v.

**FUNK SEEDS INTERNATIONAL, Defendant and Appellant.**

**Nos. 14395, 14405.**

Supreme Court of South Dakota.

Argued May 23, 1984.

Decided Aug. 14, 1985.

Rehearing Denied Sept. 20, 1985.

Timothy J. Nimick of Woods, Fuller, Shultz & Smith, P.C., Sioux Falls, for plaintiff and appellee.

Michael L. Luce of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for defendant and appellant.

HENDERSON, Justice (on reassignment).

## ACTION

This is an appeal by Funk Seeds International, defendant-appellant herein, from a judgment entered on a jury verdict for $26,253 in favor of Larry Hanson, plaintiff-appellee. We affirm this verdict arising from a suit on breach of warranty on the sale of seed corn.

## FACTS

Appellee Hanson farms approximately 2,500 acres in Turner County, South Dakota. In the early spring of 1980, appellee attended a Funk Seeds promotional meeting wherein Funk representatives depicted Funk's G–4507 to be a very high-yielding corn. Thereafter, and based on these representations, appellee switched his order from another Funk hybrid to G–4507.

The seed was delivered and accepted by an agent of appellee who signed the delivery receipt in appellee's name. Said delivery receipt stated in part:

### LIMITATION OF WARRANTY AND REMEDY

Funk Seeds International warrants that the seeds are as described on the tag attached to the bag, subject to tolerances established by law. THE FOREGOING EXPRESS WARRANTY EXCLUDES ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING THE WARRANTY OF MERCHANTABILITY. THERE ARE NO WARRANTIES WHICH EXTEND BEYOND THE DESCRIPTION THEREON.

By acceptance and use of the seed, Buyer agrees that the Company's liability and the Buyer's exclusive remedy for

breach of any warranty except those expressly provided herein shall be limited in all events to a return of the purchase price of the seed. Claims for defects in the seeds must be presented within a reasonable time after discovery. Legal actions shall be commenced within one year after date of discovery of defects. Crop yields and quality are due to so many causes and conditions beyond the Company's control that neither the Company nor the distributor or the dealer can warrant yield or quality and unless accepted on these terms, the Buyer shall return the seed in the original unopened container within fifteen days of purchase for a refund of the purchase price. This Limitation of Warranty and Remedy does not apply if prohibited by law. Funk Seeds International is a Company of CIBA–GEIGY Corporation.

I have read and agreed that the LIMITATION OF WARRANTY AND REMEDY are a part of the terms of this sale.

The Limitation of Warranty and Remedy provisions, minus the last paragraph, were also contained on a tag attached to each of the 55 bags of G–4507 delivered.

On April 24, 1980, appellee began planting this seed in 130 acres designated as field No. 2. This process was completed on April 26, 1980. Field No. 1 had been planted two days prior to this time. Fields No. 3 and 4 were planted two days after. The seeds planted in these other fields were of the same hybrid (Missouri 17) but were from differing seed dealers. Each field was irrigated, of the same soil composition and fertility, all were within a two and one-half mile vicinity, and all received the same farming practices.

The fields germinated properly but after coming up, field No. 2 was hit by a slight frost which left a few ice crystals. Appellee and Jay Parsons (appellee's neighbor and the Funk dealer who sold the seed in question) testified, however, that in their opinions, the corn crop was not damaged.

Appellee began irrigating all four fields in mid-June of 1980. Thereafter, all the fields began pollinating and at the same time continued to pollinate. After pollination, appellee noticed that the Funk's field (No. 2) was much taller than the other fields, was spindly, and appeared to not produce any ears of corn on 40% to 60% of the stalks. Good ears of corn were grown in certain low areas of field No. 2 but many of the ears grown elsewhere in this field were either half barren or merely spotted with kernels.

Appellee contacted Jay Parsons who again examined the Funk's field and noted its uniform lack of ear development. Parsons contacted Funk Seeds who sent their agronomist, Gordon Johnson, to examine the field on August 20, 1980. This examination revealed no disease, insects, insecticide, herbicide, mechanical injury, or fertilizer problems. The soil, however, had high fertility and sufficient water and appellee's other fields (planted with the same hybrid, at about the same time, and farmed under the same farming practices) did not experience these problems. Other corn fields in this area planted with G–4507 also did not experience such problems.

On September 3, 1980, appellee began cutting the field for silage. During this process, the corn stalks turned white overnight and the few ears which were produced would fall off the stock.

At trial, no direct evidence was presented as to the cause of field No. 2's problems or the nature of any defect which might have caused the problems. Appellee's case rested on circumstantial evidence. Expert witnesses for appellant Funk Seeds stated appellee's crop failure was due to heat stress and inadequate moisture during pollination. Notwithstanding, the jury returned a verdict for appellee and assessed damages at $26,253. The trial court entered judgment on this jury verdict. From this judgment, appellant now appeals. Appellant has framed five issues, whereas appellee has presented four issues. We distill these into four issues and address them seriatim.

## DECISION

### I.

WAS THE TRIAL COURT CORRECT IN NOT GRANTING APPELLANT'S

MOTION FOR A DIRECTED VERDICT? WE HOLD THAT IT WAS.

On this issue, appellant Funk advances two arguments. First, appellant contends that appellee Hanson was required to prove the corn seed contained a specific defect, and since appellee failed to prove such a defect existed, appellant was entitled to a directed verdict. We disagree.

 Although plaintiff's burden of proof requires him or her to show a defect existed when the product left defendant's hands, this Court has held that: "No specific defect need be shown if the evidence, direct or circumstantial, permits the inference that the problem was caused by a defect. A defect may be inferred from proof that the product did not perform as intended by the manufacturer ...." *Drier v. Perfection, Inc.*, 259 N.W.2d 496, 504 (S.D.1977) (citations omitted). Identification of an existing defect is not essential to recovery upon express warranty. It is sufficient if, as here, the evidence demonstrates, either directly or by permissible inference, that the corn was defective in its performance or function or that it otherwise failed to conform to the warranty. *Osburn v. Bendix Home Systems, Inc.*, 613 P.2d 445, 448 (Okla.1980). *Osburn* cites nine jurisdictions supporting this proposition, including *Drier*. *See also, Community Television Services v. Dresser Industries*, 586 F.2d 637, 641 (8th Cir. 1978), *cert. denied*, 441 U.S. 932, 99 S.Ct. 2052, 60 L.Ed.2d 660 (1979); *Fajardo v. Cammack*, 322 N.W.2d 873, 876 (S.D.1982); *Pearson v. Franklin Laboratories, Inc.*, 254 N.W.2d 133, 140 (S.D.1977); *Shaffer v. Honeywell, Inc.*, 249 N.W.2d 251, 256 (S.D. 1976); *Swenson v. Chevron Chemical Co.*, 89 S.D. 497, 505, 234 N.W.2d 38, 42–43 (1975); *Sweetman Constr. Co., Inc. v. Dakota Pump*, 88 S.D. 650, 654, 226 N.W.2d 792, 794 (1975); and *Valentine v. Ormsbee Exploration Corp.*, 665 P.2d 452, 462 (Wyo.1983), holding that "[a] product is defective when it fails to perform reasonably and safely the function for which it was intended[,]" quoting *Drier*, 259

N.W.2d at 504. There was no evidence that the seed purchased by appellee was tampered with or otherwise exposed to any elements that would alter its condition from the date it was purchased from appellant and the date it was planted by appellee. We extended our holding in *Drier* in *Crandell v. Larkin & Jones Appliance Co.*, 334 N.W.2d 31, 34 (S.D.1983), expressing that a plaintiff does not have to show that a defendant "created the defect, but only that the defect existed when the product was distributed by and under [defendant's] control."

At trial, appellee Hanson presented testimony that the field planted with G–4507 (field No. 2) was planted at about the same time as his other fields, was subject to the same farming practices and weather conditions, but failed to produce a crop while his other fields—planted with the same hybrid—did grow corn. Testimony disclosed that field No. 2 did not experience disease, insects, insecticide, herbicide, mechanical injury, or fertilizer problems, but instead was highly fertile and sufficiently watered.

Appellant's expert did testify that appellee's problems might have resulted from other factors, i.e., slight frost, heat stress, and the application of a certain herbicide. However, in light of the complete evidence and testimony offered at trial, particularly that this plot of corn was properly planted and cultivated, and that all of appellee's plots of corn were subject to the same heat stress, the jury could reasonably have determined, without speculation or conjecture, that appellee's crop failure in field No. 2 of failing to produce ears was the result of defects in Funk's G–4507; and, thus, appellant's product did not comply with its warranty that it would produce corn. *Swenson v. Chevron Chemical Co.*, 234 N.W.2d 38.

 Second, appellant contends that a directed verdict should have been granted because there was no evidence of a breach of warranty. Appellant asserts that this case is controlled by the Federal Seed Act[1]

**1.** 7 U.S.C.S. § 1551 (1985).

and the South Dakota Seed Act[2] and that the only warranty that exists is that the seed complies with statutory requirements and specifications on the label. Appellant argues that the seed in question met the statutory and label requirements and thus the trial court should have directed a verdict on the breach of warranty issue. We disagree.

The Federal and South Dakota Seed Acts were enacted to protect the purchasers of seed from falsely labeled products. They provide criminal sanctions and were not intended to abrogate civil remedies for breach of warranty provided in the Uniform Commercial Code. Funk's contentions in this regard are without merit.

■■■■ "A directed verdict is proper only when the evidence is undisputed or such that reasonable minds could not draw different inferences or conclusions from the facts." *Swiden Appliance v. Nat'l Bank of S.D.*, 357 N.W.2d 271, 277 (S.D.1984). In the case at bar, the evidence was not undisputed. Neither was the evidence such that reasonable minds could not draw different conclusions on the existence of a defect or a breach of warranty that the seed would grow corn. There were questions of fact to be resolved by the jury. If sufficient evidence exists, so that reasonable minds could differ, a directed verdict is not appropriate. *Cox v. Brookings Int'l Life Ins. Co.*, 331 N.W.2d 299, 300 (S.D.1983). This was represented to be high-yielding corn; it was not; evidence presented by appellee reflected that the corn was properly planted and cultivated; appellee presented sufficient circumstantial evidence, under the rule established in *Drier*, to prima facie establish a cause of action for breach of warranty, express or implied. The evidence must be accepted which is most favorable to the nonmoving party and the trial court must indulge all legitimate inferences therefrom in his favor. *Weber v. Bernard*, 349 N.W.2d 51, 53 (S.D.1984). The trial court did not err by failing to grant appellant's motion for directed verdict.

2. SDCL ch. 38–12, et seq.

## II.

DID THE TRIAL COURT ERR IN HOLDING THE WARRANTY DISCLAIMER AND LIMITATION OF REMEDY PROVISIONS TO BE UNCONSCIONABLE AND INVALID? WE HOLD THAT IT DID NOT.

■■ At trial, appellant Funk attempted to introduce delivery receipts and a tag which was attached to the bags of seed delivered to appellee Hanson. These exhibits contained the warranty disclaimer and limitation of remedy provisions outlined in the facts above. The trial court, however, denied admission of these exhibits and found the provisions in question to be unconscionable. Appellant here asserts that such a determination was in error. We disagree.

The exclusion or modification of warranties and the contractual modification or limitation of remedies is permitted under SDCL 57A–2–316 and SDCL 57A–2–719, respectively. In sum, a seller may use a disclaimer clause to control his liability by reducing the manner in which he can be found to have breached; and, also, a seller may attempt to restrict the type of remedy available once a breach is infixed. However, the trial court may refuse to enforce such provisions if it finds them to have been unconscionable when made and if it affords the parties a reasonable opportunity to present evidence concerning its commercial setting, purpose, and effect so as to aid the court's decision. SDCL 57A–2–302(1). The trial court properly followed these procedural requirements by accepting pretrial memoranda and offers of proof at trial and correctly excluded the exhibits, determining their provisions to be unconscionable. SDCL 57A–2–302(2).

In reaching our determination, we are most persuaded by our past decision in *Durham v. Ciba-Geigy Corp.*, 315 N.W.2d 696 (S.D.1982). In *Durham*, 315 N.W.2d at 700, this Court stated:

To permit the manufacturer of the pesticide to escape all consequential responsibility for the breach of contract by inserting a disclaimer of warranty and limitation of consequential damages clause, such as was used herein, would leave the pesticide user without any substantial recourse for his loss. *One-sided agreements whereby one party is left without a remedy for another party's breach are oppressive and should be declared unconscionable.*[3]

In this case, loss of the intended crop due to ineffectiveness of the herbicide is inevitable and potential plaintiffs should not be left without a remedy. Furthermore, the purchasers of pesticides are not in a position to bargain with chemical manufacturers for contract terms more favorable than those listed on the pre-printed label, nor are they in a position to test the effectiveness of the pesticide prior to purchase....

... [P]ublic policy should not allow a chemical manufacturer to avoid responsibility for the ineffectivenss of a product which was offered for one purpose, the effective control of corn rootworm larvae. (Citations omitted; emphasis supplied mine.)

Although the product in *Durham* was manufactured and the product here in question, to wit, corn seed, is a product of nature, the process used in marketing both products is nearly identical so as to permit application of the considerations found relevant in *Durham.*

Appellee Hanson, like most farmers, was not in a position to bargain for more favorable contract terms, nor was he able to test the seed before the purchase. A crop failure is inevitable if the corn seed is ineffective and to enforce the provisions here in question, which would only allow the return of the purchase price, would leave appellee without any substantial recourse for his loss. In essence, appellee would be left without a remedy for another's breach.

*Cf. Rozeboom v. Northwestern Bell Telephone Co.*, 358 N.W.2d 241, 242 (S.D.1984). The trial court's determination that these provisions were unconscionable is therefore not in error and we uphold its decision in this regard.

### III.

DID THE TRIAL COURT ERR IN PERMITTING CERTAIN TESTIMONY WITHOUT PROPER FOUNDATION? WE HOLD THAT IT DID NOT.

■ Appellant Funk argues that appellee Hanson should not have been allowed to compare yields from other corn fields because sufficient similarity did not exist so as to justify a comparison. We disagree.

Testimony was presented which established that the comparison fields were of the same soil composition, farmed with the same procedures, planted at about the same time with the same hybrid (Missouri 17), irrigated in the same manner, and were within a two and one-half mile vicinity. Although the Funk's field (field No. 2) was subjected to a slight, nondamaging frost and used a different brand of herbicide, the similarities among the fields were enough to allow yield comparisons. In *Durham,* this Court approved the admission of testimony concerning problems with a herbicide, even though the fields there in question had more differences than the comparison fields here. The admission of the yield comparisons based on the foundational testimony elicited at trial was not an evidentiary error.

### IV.

DID THE TRIAL COURT ERR IN FAILING TO AWARD PREJUDGMENT INTEREST? WE HOLD THAT IT DID NOT.

Appellee Hanson here contends that prejudgment interest should have been awarded because his damages were capable of

---

**3.** Cited with approval as principal authority in *Rozeboom v. Northwestern Bell Telephone Co.,*

358 N.W.2d 241 (S.D.1984).

being made certain by calculation upon a particular day.[4] We disagree.

SDCL 21–1–11 provides:

Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor, from paying the debt.

■ To be awarded prejudgment interest under this statute, the exact amount of damages must be known or readily ascertainable. *State v. Ed Cox & Son*, 81 S.D. 165, 180, 132 N.W.2d 282, 290–91 (1965); *Beka v. Lithium Corp. of America*, 77 S.D. 370, 375, 92 N.W.2d 156, 160 (1958). Prejudgment interest is not to be awarded if the damages are uncertain until determined by the trier of fact. *Arcon Constr. Co. v. S.D. Cement Plant*, 349 N.W.2d 407, 416 (S.D.1984). "Thus, the test for awarding interest is not whether liability was clear, but whether (assuming liability) the damages were reasonably ascertainable by reference to prevailing markets." *Cole v. Melvin*, 441 F.Supp. 193, 210 (D.S.D.1977).

■ In the present case, appellee's lost yields were unknown and thus his damages could not become certain by the mere application of his proposed arithmetic calculation because the lost yields were to be determined by the jury. Yields, per appellee's own testimony, varied year by year. Appellee was therefore not entitled to prejudgment interest under the statute and the trial court's denial of the same did not constitute error.

The judgment is affirmed in all respects.

DUNN, Retired Justice, and MOSES, Circuit Judge, concur.

WOLLMAN, J., and MILLER, Circuit Judge, concur in part and dissent in part.

MILLER, Circuit Judge, sitting for FOSHEIM, C.J., disqualified.

MOSES, Circuit Judge, sitting for MORGAN, J., disqualified.

WUEST, Circuit Judge, Acting as Supreme Court Justice, not participating.

MILLER, Circuit Judge (concurring in part, dissenting in part).

I concur with the majority opinion as it relates to the disposition of Issues II, III, and IV. I also concur with the majority opinion's statement of the applicable law set forth in Issue I.

It must be emphasized that this case differs from the usual breach of warranty action because it does not involve manufactured goods, as was the case in *Durham v. Ciba-Geigy Corp.*, 315 N.W.2d 696 (S.D. 1982) and *Swenson v. Chevron Chemical Co.*, 89 S.D. 497, 234 N.W.2d 38 (1975). Rather, appellant is a distributor of a product of nature, namely seeds. Its function is to process, grade, color, test, advertise, and sell the product. I would concur that the public policy considerations articulated in *Durham* would generally require that a distributor of seeds be held to the same general warranty obligations as a manufacturer, with some modifications.

Even accepting the law that in a breach of warranty case no specific defect need be shown if direct or circumstantial evidence permits an inference that some defect was present, one seeking a recovery of damages for breach of warranty still has an obligation to establish that a defect existed "at a time when the defendant had possession, control or responsibility for the condition of the product." *Drier v. Perfection, Inc.*, 259 N.W.2d 496, 504 (S.D.1977).

Here, the evidence is, in my opinion, *totally devoid* of any showing that the seed was defective. The majority opinion failed to mention that timing in the planting of seed corn is crucial and that the fact that the fields were planted at approximately the same time is not particularly signifi-

---

4. The calculation advanced by appellee to arrive at a sum certain is: the price of corn at the time field No. 2 was harvested ($2.76 a bushel) times the loss of yield.

cant; that many other farmers who planted fields using seed from the exact same lot as that in question here experienced no similar problems; that appellee applied a herbicide to field # 2, but not to other fields where he had success; and that although 40% to 60% of the stalks in this field did not produce good ears, conversely, 40% to 60% of the stalks did produce good ears of corn.

An agronomist who had inspected field # 2 testified that he checked approximately seventy rows and observed normally developed ears in the low ground where the lane goes to the center of the irrigation system. That fact goes a long way in disputing appellee's allegations that the seed itself was defective. Perhaps appellee meant to argue that he planted the defective seed only on the high ground of the field, and that the good seed was planted on low ground. That proposition defies all logic.

The fact that the seed produced good ears on the low ground is proof that the seed itself was not defective. It is also strong evidence, along with other evidence in the case, that the corn plants suffered heat stress during the critical pollination period and that the lack of moisture at that critical time caused the lower than average yield.

Appellee merely introduced evidence to establish that field # 2 experienced a lower than average yield and that the low yield caused him economic damage. In *Bickett v. W.R. Grace & Co.*, 12 U.C.C.Rep.Serv. 629, 646 (W.D.Ky.1972), the court wrote, in a case with facts not unlike those here, that

> [p]laintiffs have only shown poor results without any specific proof as to how the seed was defective or how the defect caused the result that they claim. . . .

*Briner v. General Motors Corp.*, Ky., 461 SW2d 99 (1971) holds that mere proof of poor results requires the jury first to infer a defect and then infer that the defect caused the injury, and that the plaintiff may not prove his case by basing an inference upon an inference.

Here, appellee presented evidence from which one could infer that a defect must have existed in the seed because other factors needed to grow corn seemed satisfactory. Using the inference that the seed must have been defective, appellee then went on to infer that the defective seed caused him economic damage. Allowing a plaintiff to recover upon such a chain of inferences is unacceptable and forces the jury to indulge in guesswork, speculation, and conjecture.

Additionally, because of the rulings of the trial court, the burden of proof was shifted to appellant to establish that the low yield did not, in and of itself, mean that the seed was defective. Appellant was forced to introduce evidence regarding all of the variables that are affected when dealing with a product of nature such as corn seed. Because appellee did not introduce evidence of a defect in the seed, appellant had nothing to specifically refute, but everything to disprove. In *Herman v. General Irrigation Co.*, 247 N.W.2d 472, 476 (N.D.1976), the North Dakota Supreme Court held that "if liability could be imposed under [a] warranty theory without a showing that the product was defective, the supplier of the warranty would in reality become an absolute guarantor of his product. The law has not gone so far." The majority opinion in this case, has done exactly what North Dakota held improper; that is, it made appellee an absolute guarantor of its seed. I strenuously disagree with such a holding.

Another factor which must weigh heavily in the determination here relates to an evidentiary matter which although not presented to the jury, is part of the record considered by the trial court. Appellee had obtained an expert witness to review all of the facts in the case. In the pre-trial deposition of that expert, he could not express an opinion as to whether a defect in the seed caused the problems in field # 2. During that deposition, the expert was asked: "Again, as to the particular problem Mr. Hanson had[,] you wouldn't know the cause of that and you're not offering any opinion, is that correct?" The expert

replied, "It's difficult to speculate." While it was difficult for appellee's expert to speculate as to the cause of the problems in field #2, the jury was allowed to and obviously did not have any difficulty in speculating as to the cause, especially considering the total absence of any evidence showing a defect in the seed.

The deposition of the expert was not presented to the jury. However, at trial, by stipulation of the parties, the deposition was made part of the record. Considering the nature of the total contents of the deposition, it is not difficult to ascertain why appellee did not present it to the jury, even though he later claimed that he merely forgot. When offered the chance to reopen his case to include the deposition, he declined.

For all of the reasons stated above, I would reverse.

I am authorized to state that Justice WOLLMAN joins in this concurrence in part, dissent in part.