Gary SCHMALTZ, Plaintiff
and Appellee,

v.

Abner T. NISSEN, d/b/a Nissen Seed &
Feed of Newell, South Dakota; Farm-
ers Feed & Seed of Sturgis, South Da-
kota; and Crown Quality Seed Compa-
ny, Inc., of Vernon, Texas, Defendants
and Appellants.

Frank NIBLE, Plaintiff and Appellee,

v.

FARMERS FEED & SEED OF STURGIS,
South Dakota and Crown Quality Seed
Company, Inc., of Vernon, Texas, De-
fendants and Appellants.

Nos. 15841 to 15845.

Supreme Court of South Dakota.

Argued March 23, 1988.

Decided Nov. 9, 1988.

Leroy Hill, Belle Fourche, for defendant and appellant Abner T. Nissen, d/b/a Nissen Seed & Feed.

Thomas E. Simmons, Rapid City, for defendant and appellant, Crown Quality Seed Company, Inc., of Vernon, Texas.

Gregory G. Strommen and Gene R. Bushnell, Rapid City, for defendant and appellant Farmers Feed & Seed of Sturgis.

G. Verne Goodsell, Rapid City, for plaintiff and appellee, Frank Nible.

Steven D. Rich, Rapid City, for plaintiff and appellee Gary Schmaltz.

TUCKER, Circuit Judge.

## ACTION

This is an appeal from two separate actions which were consolidated for trial to the court. The trial court entered judgment in favor of Frank Nible (Nible) and against Farmers Feed & Seed (Farmers Feed) and Crown Quality Seed Company, Inc., (Crown) in the amount of $46,540 for breach of express and implied warranties involving the sale of seed. The trial court entered judgment in favor of Gary Schmaltz (Schmaltz) and against Abner T. Nissen (Nissen) and Crown in the amount of $43,820 for breach of express and implied warranties involving the sale of seed. Crown, Farmers Feed and Nissen (collectively, sellers) appeal from these judgments.[1] We affirm, in part, and reverse, in part.

## FACTS

Crown is engaged in the commercial processing and marketing of Big Red # 1 sorghum seed (Big Red # 1). In early 1981, Crown sold a quantity of Big Red # 1 to Farmers Feed, who in turn sold some of the bags to Nissen.

The "terms and conditions of sale and warranty" label on all the bags provided:

Crown Quality Seed Company has processed, stored, cured, packaged, sampled and tested these seeds in accordance with approved procedures and warrants that samples of these seed were tested on the dates shown on the label and that the description on the label conforms to these samples. Crown Quality Seed Co., Inc., makes no other express warranty

---

1. Nissen's brief is a two page brief adopting by reference other briefs as follows: "All contents and arguments of the briefs of the Appellants, Farmers Feed & Seed of Sturgis, South Dakota, and the Crown Quality Seed Co., Inc., of Vernon, Texas, which are consistent with the interests of this Defendant and paragraph 6 of this Appellant's docketing statement are adopted by reference pursuant to SDCL 15–26A–67, and are supported by Appellant, Abner T. Nissen, d/b/a Nissen Seed & Feed of Newell, South Dakota." SDCL 15–26A–67 authorizes a party to join in a single brief or adopt by reference any part of the brief of another. However, the party joining or adopting a portion of another party's brief should state with specificity the portion of the brief which is being adopted. It is not up to this court to determine which portions of Farmers Feed's brief and which portions of Crown's brief are consistent with the interests of Nissen.

and *THERE ARE NO IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS* in connection with the sale of these seed. The liability of Crown Seed Co., Inc., to the buyer and user is expressly limited to the cost of purchasing these seed. In no case shall Crown Quality Seed Co., Inc., be liable for consequential, incidental or special damages, such as but not limited to, loss of crops or increased costs of cultivation and production.

These terms also appear at the bottom of Crown's invoice to Farmers Feed. An information label on the bag stated: "This quality seed is protected by Heptachlor insecticide treatment to help ensure stronger stands, superior quality and increased yields."

On May 21, 1981, Schmaltz purchased 80 fifty pound bags of Big Red #1, lot 138, from Nissen. Schmaltz planted the Big Red #1 seed along with two bags of Sweetchow sorghum seed left over from a previous year. Both brands of seed were planted in the same field, in the same manner, and with the same soil conditions, temperature and moisture. Schmaltz planted the seed in an acceptable and proper manner. Schmaltz later purchased an additional 41 bags of Big Red #1 from Nissen. In all, Schmaltz planted 464 acres with the Big Red #1 seed and Sweetchow sorghum sudan grass seed that he had left over from the year before.

At some time in June 1981, Schmaltz contacted Nissen complaining that when compared to the Sweetchow seed, the Big Red #1 seed was failing to emerge. In mid-June, Schmaltz again went to Nissen and complained about the emergence of the Big Red #1 seed. Nissen suggested that the soil temperature was too low at the time of planting. Schmaltz then purchased an additional 80 bags of Big Red #1 on June 17, 1981. He returned on June 25, 1981, and purchased another 50 bags. All of the seed was replanted and again failed to emerge.

Nible purchased 200 bags of Big Red #1, lot 152, from Farmers Feed on May 20, 1981. Nible explained to Farmers Feed his need for a hybrid sorghum sudan grass seed suitable for growing livestock forage feed. Farmers Feed recommended that Nible purchase Big Red #1.

Nible planted 538 acres of Big Red #1 seed on his farmland in Harding County. There was adequate sub-surface moisture and the soil temperature was appropriate. In early June 1981, Nible noticed that the sorghum he planted was failing to properly emerge. During the same planting period, Nible planted 40 acres for a neighbor using Sugargraze sorghum seed left over from the previous year. The 40 acres of Sugargraze was in similar soil and terrain to Nible's 538 acres, and was within two miles of Nible's planting. While the Sugargraze crop emerged into a healthy stand, little of the Big Red #1 emerged from the ground. Nible had planted both the Big Red #1 and the Sugargraze at the same time, with the same drill, using the same depth and pounds per acre of seed. The moisture, ground temperature and rain received was the same for the Sugargraze and the Big Red #1.

Between June 10, 1981, and June 11, 1981, Nible checked with other sorghum growers in the area and found that they were also having problems with Big Red #1 emerging into a healthy stand. Nible then advised Farmers Feed of the problem with Big Red #1. On June 23, 1981, Nible replanted his Big Red #1 fields with Sweetchow. The Sweetchow emerged and developed into a good stand, but later dried out because the replant used up the sub-surface moisture when the ground was necessarily reworked for the second planting.

At Nible's request, the Harding County Extension Agent viewed Nible's fields and found a poor emergence of Big Red #1. The agent then started a test strip on Nible's land. The agent supervised the planting of various varieties of sorghum sudan grass which included Big Red #1 from the lots purchased by Nible and Schmaltz. All varieties were planted in the same manner: side by side in individual rows. In all, six different varieties were tested. The test strip produced the following average results:

| VARIETY | AVERAGE PLANTS PER 12 FOOT STRIP |
|---|---|
| 1. Joe Fagg Seedman Sweetchop | 36.25 |
| 2. Toffee Seed Company Sugargraze | 23.75 |
| 3. Crown Quality Big Red # 1, Lot 138 | 16.26 |
| 4. Hamsmeier & Sons Big Red, Lot 79813 | 13.75 |
| 5. Hamsmeier & Sons Big Red, Lot 80816 | 12 |
| 6. Crown Quality Seed Big Red # 1, Lot 152 | 10 |

Although not a scientific experiment, the results reveal that Big Red # 1 failed to properly emerge when compared to other brands.

The National Weather Service keeps records at the Redig Reporting Station in Harding County. The Redig Reporting station is approximately two to five miles from Nible's fields. Its records show that the moisture conditions for the planting and growth season in 1981 were average or above the historical averages. Other farmers in the immediate area who planted Big Red # 1 sorghum sudan seed under similar weather conditions and soil conditions testified about its failure to emerge and yield a harvestable crop. Farmers 50 to 60 miles south, however, were satisfied with their 1981 sorghum.

The trial court found that the Big Red # 1 sorghum seed purchased by Nible and Schmaltz was an inferior quality seed. The trial court held the warranty disclaimer and the limitation of damages unconscionable and awarded damages to Nible and Schmaltz on the theories of breach of express warranty, breach of implied warranty of fitness for a particular purpose and breach of an implied warranty of merchantability.

## ISSUE ONE

Does the Federal Seed Act and/or the South Dakota Seed Act preempt a warranty claim under the Uniform Commercial Code?

▆ Nissen asserts that this case is controlled by the Federal Seed Act (7 U.S.C. § 1551 et seq. (1985)), and the South Dakota Seed Act (SDCL 38–12, et seq.) and that the only warranty that exists is that the seed complies with statutory requirements and specifications on the label. "The Federal and South Dakota Seeds Acts were enacted to protect the purchasers of seed from falsely labeled products." *Hanson v.*

*Funk Seeds International,* 373 N.W.2d 30, 34 (S.D.1985). They provide criminal sanctions that are not intended to abrogate civil remedies for breach of warranty provided in the Uniform Commercial Code. *Id.* Nissen's argument is without supporting authorities and without merit.

## ISSUE TWO

Did the sellers' descriptions and affirmations of fact give rise to express warranties?

Sellers argue that there are no express warranties in this case. Pursuant to SDCL 57A–2–313:

(1) Express warranties by the seller are created as follows:

Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

The South Dakota Supreme Court in *Swenson v. Chevron Chemical Co.,* 89 S.D. 497, 234 N.W.2d 38 (1975), set forth the elements of proof required in a breach of warranty case.

In order to recover money damages for a breach of express warranty one must prove:

'(1) an affirmation of fact or promise made by the seller to the buyer relating to the goods;

(2) *such affirmation of fact or promise became a part of the basis of the bargain;*

(3) that the injured party, in making the purchase, relied on the representations, affirmations of fact or promises;

(4) that the goods sold by the seller failed to comply with the promises or

affirmations of fact made by the seller;

(5) that the buyer, because of such failure, was financially injured; and

(6) that such failure to comply was a proximate cause of the financial injury suffered by the buyer.' (emphasis supplied)

89 S.D. at 503–504, 234 N.W.2d at 42, *quoting General Supply and Equipment Co., Inc. v. Phillips,* 490 S.W.2d 913 (Tex.Civ. App.1972).

■ In this case the trial court need not determine whether the language on the seed bags constitutes an express warranty, since it is clear that such language did not in any way become the basis of the bargain. Both Nible and Schmaltz admit that they purchased the seed prior to seeing the bag containing the seed. Neither read the language supposedly creating the express warranty until after the sale was completed. Without having read or even known of this language, it is impossible to say this language was part of the basis of the bargain. For similar rulings by other courts, *see Agricultural Services Association v. Ferry–Morse Seed Co.,* 551 F.2d 1057 (6th Cir.1977) (purchase on basis of prior satisfactory experience with product, not description, does not make description part of the basis of the bargain); *Chemco Industrial Applicators Co. v. E.I. duPont de Nemours & Co.,* 366 F.Supp. 278 (E.D.Mo. 1973) (new label not used until after decision on purchase, could not have been part of the bargain); *Jones v. Clark,* 36 N.C. App. 327, 244 S.E.2d 183 (1978) (seal of approval, attached to product after contract had been made, did not become a part of the basis of the bargain).

■ Nible also claims that an express warranty was created when an employee of Farmers Feed told him that Big Red #1 was "good seed." An affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty. SDCL 57A–2–313(2). General statements to the effect that goods are "the best" or are "of good quality," or will "last a lifetime" and be "in perfect

condition," are generally regarded as expressions of the seller's opinion or "the puffing of his wares" and do not create an express warranty. *Royal Business Machines v. Lorraine Corp.,* 633 F.2d 34, 42 (7th Cir.1980). However, words of this type may create express warranties when given in response to specific questions or when given in the context of a specific averment of fact. The words "good seed" in the context in which they were used do not create an express warranty.

The trial court's holding of breach of express warranty is hereby reversed. Therefore, for plaintiffs to be entitled to damages their recovery must rest upon breach of implied warranty of merchantability or breach of implied warranty of fitness for a particular purpose.

## ISSUE THREE

Was Crown's disclaimer of warranty and limitation of consequential damages invalid as being unconscionable and against public policy?

Sellers argue that the trial court erred in holding the disclaimer of warranties and limitation of damages unconscionable.

Nible and Schmaltz allege that the disclaimer of warranties and limitation of damages are ineffective for three reasons. First, they were never part of the contract for the sale of seed between sellers and buyers. Second, the attempted disclaimers of implied warranties were ineffective because they were not conspicuous. Finally, the disclaimers and limitations were unconscionable and violated public policy.

■ The first two claims fail for the simple reason that the trial court entered no findings of fact or conclusions of law that (1) the warranty disclaimers were not a part of the contract for the sale of seed or, (2) the attempted disclaimers of implied warranties were ineffective since they were inconspicuous. Nible and Schmaltz did not file any notice of appeal raising these issues before the court.

The trial court did hold the disclaimer of warranties and limitation of damages un-

conscionable and void as against public policy. Initially we note that the exclusion or modification of warranties and the contractual modification or limitation of remedies is permitted under SDCL 57A–2–316 and SDCL 57A–2–719. A seller may validly use a disclaimer clause to remove his implied warranties, and may further restrict the type of remedy available once a breach is determined. However, the trial court may still find these provisions unconscionable under SDCL 57A–2–302.

SDCL 57A–2–302 provides the test for unconscionability:

(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

Since this case was tried to the court, the trial court satisfied the procedural requirements of SDCL 57A–2–302(2) by allowing the presentation of appropriate evidence during the course of the trial. (Were this a trial to the jury, the trial court would have been required to receive evidence of the commercial setting, purpose and effect of these provisions prior to the commencement of the trial.)

This court has recently addressed the unconscionability question in *Hanson v. Funk Seeds International, supra.* In that case a farmer brought a breach of warranty action against a seed corn supplier for the sale of defective seed. The delivery receipt contained a limitation of warranty

and remedy similar to that contained on the seed bags in this case. This court unanimously [2] affirmed the trial court's determination that the disclaimer and limitation of damages were unconscionable. In *Hanson,* this court cited with approval the decision in *Durham v. Ciba–Geigy Corp.,* 315 N.W.2d 696 (S.D.1982). In *Durham,* 315 N.W.2d at 700, this court stated:

To permit the manufacturer of the pesticide to escape all consequential responsibility for the breach of contract by inserting a disclaimer of warranty and limitation of consequential damages clause, such as was used herein, would leave the pesticide user without any substantial recourse for his loss. One sided agreements whereby one party is left without a remedy for another party's breach are oppressive and should be declared unconscionable.

This court further stated in *Hanson, supra,* "Although the product in *Durham* was manufactured and the product here in question, to wit, corn seed, is a product of nature, the process used in marketing both products is nearly identical so as to permit application of the considerations found relevant in *Durham.*" 373 N.W.2d at 35.

■ The holdings in *Durham, supra,* and *Hanson, supra,* are equally applicable to this case. Nible and Schmaltz, like most farmers, were not in a position to bargain for more favorable contract terms, nor were they able to test the seed before their purchase. A loss of yield from an intended crop due to inferior seed is inevitable, and they should not be left without a remedy. There is no compelling reason to modify this court's holding on the unconscionability issue in *Hanson, supra.*

■ In 1986 the South Dakota Legislature passed a legislative enactment found at Chapter 410 of the 1986 Session Laws. This legislative enactment states: "BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF SOUTH DAKOTA: The ruling in Decision II of *Hanson v. Funk Seeds International,* 373 N.W.2d 30 (S.D.

---

**2.** Although *Hanson* was a three to two decision, the opinion as it related to the unconscionability of the disclaimer of warranty and limitation of damages provision was unanimous. The issue upon which the justices split was whether the plaintiff proved the existence of a defect.

1985) is hereby abrogated." The cause of action in the present case arose in 1981. Nowhere in the legislative enactment is there any statement that this act is retroactive or that it is intended to be curative or explanatory of prior legislation. SDCL 2-14-21 provides: "No part of the code of laws enacted by § 2-16-13 shall be construed as retroactive unless such intention plainly appears." Since there is no retroactive intent from the enactment, it has no application in this case. The decision of the trial court holding the disclaimer of warranties and limitation of damages unconscionable is affirmed.

## · ISSUE FOUR

Did Schmaltz and Nible establish the existence of a defect in the seed?

Sellers next claim that Schmaltz and Nible failed to prove the existence of a defect at the time the goods left sellers' control.

In this case, Nible and Schmaltz offered no direct evidence of a defect in the seed. It is well settled, however, and sellers admit in their briefs, that Nible and Schmaltz are not required to offer direct evidence of a defect. *See also, Hanson, supra; Drier v. Perfection, Inc.*, 259 N.W.2d 496 (S.D. 1977). Nible and Schmaltz must, however, present sufficient evidence, direct or circumstantial, to permit the inference that seed was defective when it left sellers' possession or control. *Id.*

This court has held that "No specific defect must be shown if the evidence, direct or circumstantial, permits the inference that the problem was caused by a defect. [citations omitted]. A defect may be inferred from proof that the product did not perform as intended by the manufacturer...." *Drier, supra,* 259 N.W.2d at 504. In *Hanson, supra,* this court stated:

Identification of an existing defect is not essential to recovery upon express warranty. It is sufficient if, as here, the evidence demonstrates, either directly or by permissible inference, that the corn was defective in its performance or function or that it otherwise failed to conform to the warranty. . . .

There was no evidence that the seed purchased by appellee was tampered with or otherwise exposed to any elements that would alter its condition from the date it was purchased from appellant and the date it was planted by appellee. We extended our holding in *Drier* in *Crandell v. Larkin & Jones Appliance Co.*, 334 N.W.2d 31, 34 (S.D.1983), expressing that a plaintiff does not have to show that a defendant 'created the defect, but only that the defect existed when the product was distributed by and under [defendant's] control.'
373 N.W.2d at 33.

In this case, the trier of fact could reasonably have determined, without speculation or conjecture, that the crops' failure was the result of defects in the seed. The trial court made several findings of fact, which are supported by substantial evidence, relating to the circumstantial evidence of the existence of a defect. Nible planted both Big Red #1 and Sugargraze at the same time, with the same drill, using the same depths and pounds per acre of seed. The moisture, ground temperature and rain received was the same for the Sugargraze and the Big Red #1. The Sugargraze crop emerged into a healthy stand while little of the Big Red #1 emerged from the ground. Other farmers in the same area were having problems with Big Red #1 emerging into a healthy stand. A replant with a different brand of seed emerged properly.

Schmaltz planted Big Red #1 and Sweetchow sorghum sudan grass seed that he had left over from the year before. The Big Red #1 seed failed to emerge compared to the Sweetchow. Schmaltz purchased additional Big Red #1 seed and replanted. All of the replanting again failed to emerge. Other ranchers in the immediate area who planted Big Red #1 sorghum seed under similar weather conditions, and with a sandy loam type of soil, testified about the failure of Big Red #1 seed to emerge and to yield a harvestable crop. There was no evidence that the seed purchased by Schmaltz or Nible was tampered with or otherwise exposed to any

elements that would alter its condition from the date it was purchased from sellers and to the date it was planted by Schmaltz and Nible.

Sellers introduced various germination tests to show that the seed properly germinated. Other expert witness testimony showed, however, that germination tests only reveal the percentage of live seed and do not measure the relative health of the seeds or their relative ability to both germinate and *emerge* from the ground.

Sellers attempted throughout the trial to show that adverse weather conditions and Schmaltz and Nible's acts prevented the emergency of Big Red # 1 seed. The trial court, however, entered specific findings that there were no adverse weather conditions or acts by Schmaltz and Nible to prevent the emergence. Schmaltz and Nible's expert further testified that moisture conditions for planting and moisture conditions during the growth season were adequate to produce a harvestable crop, if the seed had grown properly. Finally, the trial court found that the Big Red # 1 seed was an "inferior quality seed." Sellers have not claimed that any of the trial court's findings of fact are clearly erroneous. The trial court is affirmed on this issue.

## ISSUE FIVE

Did the trial court err in awarding Schmaltz and Nible damages for alleged lost crop yields?

Crown asserts that the trial court's award of damages for lost crop yields was speculative and in error.

■ The method for measuring damages for crop injury resulting from breach of warranty was adopted in *Swenson, supra.* Under *Swenson,* the measure of damages is the difference between the value of the crop immediately before and immediately after the injury. First, the value that the probable crop would have had at maturity is to be calculated. Next, the value that the injured crop actually had at maturity is to be subtracted from that amount. Subtract also, where applicable, any reduction in amount and value of expense and labor

contributable to the reduced yield. *Id.* Although the measure of damages may not be left to mere speculation, damages are not rendered uncertain just because they cannot be calculated with absolute exactness. *Id.* This method of measuring damages is consistent with the buyer's remedies provided in SDCL 57A–2–714 and 57A–2–715.

■ The trial court was presented with facts and evidence which permitted calculation of Nible's and Schmaltz's damages with reasonable certainty under the *Swenson* rule. The number of acres affected by the inferior seed was established by maps and ASCS records. The reasonably expected yield was established by expert testimony, as well by the testimony of other farmers who planted a different brand of seed on nearly identical soil, using the identical equipment and drill settings as those used to plant the Big Red # 1. Schmaltz and Nible also testified about the expected yield.

The price was established through testimony of Nible, who sold sorghum sudan grass forage in 1981 for approximately $59 per ton. There was also testimony that the market prices for livestock forage were very high during this period. The trial court's use of $55 per ton is supported by substantial evidence and is not clearly erroneous. The trial court properly reduced Nible's and Schmaltz's award by the amount realized from the harvest of the reseeded sorghum and further reduced the award to account for the expenses of Schmaltz and Nible were able to avoid by not harvesting the crops.

Schmaltz and Nible met their burden of presenting facts and evidence which would afford the trial court a basis for measuring their loss with reasonable certainty. The award for lost crop yields is affirmed.

The decision of the trial court is reversed in part and affirmed in part. The award of damages to Nible and Schmaltz is affirmed.

WUEST, C.J., and MORGAN, J., concur.

SABERS and MILLER, JJ., concur specially.

TUCKER, Circuit Judge, sitting for HENDERSON, J., disqualified.

MILLER, Justice (specially concurring).

I concur specially without departing from or eroding my dissent in *Hanson v. Funk Seeds*, 373 N.W.2d 30 (S.D.1985).

Here, unlike in *Hanson*, the evidence was adequate to support a finding that the seed was defective and that the defect existed during the time appellants had possession, control or responsibility for the condition of the seed. *See also Drier v. Perfection, Inc.*, 259 N.W.2d 496 (S.D. 1977).

SABERS, Justice (specially concurring).

I concur in all respects.

I write specially to point out that disclaimers of express and implied warranties and limitation of damages to replacement of product, must be conspicuous in fact and conscionable in fact to be enforceable. SDCL 57A–1–201(10), SDCL 57A–2–316, and SDCL 57A–2–719. Even if disclaimers and limitations are sufficiently conspicuous to comply with the statutory language of the Uniform Commercial Code (UCC), they may still be inconspicuous in fact, if, by the genius of product packaging, the color, size, emphasis, or distractions on the package substantially detract from the disclaimer or limitation.

In this case, the letter of the UCC sections cited above was promptly surpassed by the genius of the packaging industry which destroyed the spirit of the UCC requirements.* To be valid disclaimers and limitations should not be swallowed up in size, color, emphasis, or by other distractions.

---

* In addition to UCC 2–316(3)(a) approved expressions like "as is" or "with all faults," suggested language could be:
Buyer beware;
Buy and plant at your own risk;
This seed may not germinate; if it does germinate, it may not emerge; if it does emerge, it may not yield.
A method of making disclaimers of warranties and limitations of damages conscionable and to provide the buyer a real choice would be to sell a product with a warranty for X-amount and to sell the same product without a warranty for the same amount less the value of the warranty. If remedies and damages were also limited, a separate reduction in price could be given. A careful seller would require the buyer to clearly indicate his understanding and acceptance of these terms on the purchase slip or receipt.