Edward HERRICK, Appellee,

v.

MONSANTO COMPANY, a Delaware
corporation, Appellant.

Edward HERRICK, Appellant,

v.

MONSANTO COMPANY, a Delaware
corporation, Appellee.

Nos. 88–5089, 88–5090.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 15, 1988.

Decided May 17, 1989.

Patrick W. Durick, Bismarck, N.D., for appellant.

Ronald C. Aho, Brookings, S.D., for appellee.

Before HEANEY,* and BEAM, Circuit Judges, and LARSON,** District Judge.

BEAM, Circuit Judge.

In this diversity case controlled by South Dakota law, Monsanto Company appeals from a verdict in favor of Edward Herrick. Herrick sued Monsanto for breach of warranty for damages sustained by his corn crop when he used a herbicide manufactured by Monsanto. We affirm the district court.[1]

## I. BACKGROUND

In the spring of 1985, Herrick, who farms near Flandreau, South Dakota, purchased Lasso II, a herbicide manufactured by Monsanto, from a local dealer. The label on each container of the herbicide warranted that the product was reasonably fit for the purposes set forth in the directions for use when used in accordance with those directions and under the conditions described. Other express or implied warranties of fitness for a particular purpose or merchantability were specifically disclaimed. The label stated that the exclusive remedy for breach of warranty was the return of the purchase price or replacement of the herbicide. The label included a limitation of remedy provision which excluded liability for incidental or consequential damages.

The rate at which a herbicide should be applied is, apparently, affected by two factors, the soil texture and the amount of organic matter. All other factors being equal, one would apply more herbicide to a field which has "heavy" soil or is high in organic matter. Sixty-two percent of the land in the fields involved in the instant action were comprised of "heavy" soil, and the remaining acreage was "medium" in composition. The evidence on the amount of organic matter was conflicting. Herrick applied 8.04 pounds of herbicide per acre to 84 acres of his corn crop. The corn crop on 61.5 of the acres failed.

Herrick filed suit in state court in South Dakota on April 24, 1986. Monsanto removed the action to federal court. Herrick alleged that Monsanto breached its express warranty and claimed damages for the purchase price of the herbicide and $15,170.05 in consequential damages. Monsanto argued that over-application of the herbicide caused the damages and that even if there was no over-application, Monsanto was not liable for consequential damages because of the limitation of remedy provision. The jury found in favor of Herrick and awarded damages in the amount of $5,000.

On appeal, Monsanto urges reversal because the district court (1) erroneously instructed the jury that consequential damages were recoverable, (2) incorrectly instructed the jury that a limitation of remedy provision is inoperative if it is unreasonable when construed with an express warranty, and (3) failed to instruct the jury on Monsanto's theory of the case. Herrick cross-appeals on the issue of damages, arguing that he should have received the full amount of damages claimed.

## II. DISCUSSION

### A. Instruction on Consequential Damages

Instruction No. 14[2] provided that if the jury found a breach of warranty, it could

* The HONORABLE GERALD W. HEANEY assumed senior status January 1, 1989.

** The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation.

1. The Honorable John B. Jones, United States District Judge for the District of South Dakota.

2. Instruction No. 14 provided:

   If you decide for the plaintiff on the question of liability then you must fix the amount of money which will reasonably and fairly compensate him for the damages that he is entitled to recover under the law and the evidence. The measure of damages for breach of an express warranty is:

   1. The difference between the value of the crop immediately before and after the injury, which is to take the value at maturity which probable crop would have had but for injury and deduct the value replacement crop actually had at maturity.

   2. Any additional costs which it was necessary to incur in replanting the damaged crop.

   3. Recovery of purchase price of herbicide.

award consequential damages. Monsanto argues that the instruction was improper since the limitation of remedy provision in Monsanto's warranty excluded liability for consequential damages.

"Consequential damages may be limited or excluded [by the warrantor] unless the limitation or exclusion is unconscionable." S.D. Codified Laws Ann. § 57A–2–719(3) (1980). Because the concept of unconscionability is not defined by the Uniform Commercial Code, we examine South Dakota case law to determine if a limitation of remedy provision has been held unconscionable under circumstances similar to this case.

In *Durham v. Ciba Geigy Corp.*, 315 N.W.2d 696 (S.D.1982), Durham, a farmer, applied herbicide to control foxtail. Although the herbicide was warranted to control foxtail, the weed flourished and damaged Durham's milo crop. When Durham claimed consequential damages, the manufacturer argued that the limitation of consequential damages clause precluded such recovery. The South Dakota court held that the limitation of remedy clause was unconscionable. It reasoned that plaintiffs should not be left without an adequate remedy because crop loss would be inevitable when the herbicide was ineffective and that such purchasers are not in a position to bargain about or to test the product. *Id.* at 700. The court found it unacceptable for manufacturers to restrict and abolish warranty and damages to the point that there is, in effect, no actionable warranty for the consumer. *Id.* at 701.

■ Relying on *Durham*, we find the instant limitation of remedy provision unconscionable. And, once a determination is made that a limitation of remedy provision is unconscionable, consequential damages may be awarded. *See id.* at 701. How-

ever, Monsanto makes two arguments to avoid the strictures of *Durham*.

The South Dakota Legislature enacted Chapter 410 of the 1986 Session Laws which provides, "The ruling in Decision II of *Hanson v. Funk Seeds International*, 373 N.W.2d 30 (S.D.1985) is hereby abrogated." In Decision II of *Hanson*, the South Dakota Supreme Court held that it was unconscionable for a manufacturer of seed to disclaim the warranty and limit the remedy to the purchase price of the seed. Monsanto asserts that the 1986 statute also implicitly abrogates *Durham*. We disagree, again relying on South Dakota precedent.

■ *Schmaltz v. Nissen*, 431 N.W.2d 657 (S.D.1988) involved a purchase of seed by a farmer, consequential damages, and a limitation of remedy provision under which a manufacturer claimed protection. Although the court ultimately held the limitation of remedy clause unconscionable, *id.* at 663, the court first addressed the effect of the 1986 statute. The court concluded that the statute did not apply to Schmaltz's cause of action which arose in 1981 because the statute, which had an effective date of July 1, 1986, had no retroactive intent. *Id.* at 662–63. Likewise, since the cause of action here arose in the spring of 1985 when Herrick applied the herbicide, the statute does not apply.

Monsanto next argues that since Section 57A–2–302 of the South Dakota Uniform Commercial Code requires that a formal hearing on unconscionability be held by the trial court and since a hearing was never conducted, a finding of unconscionability is improper. In addressing this contention, we conclude that limitation of remedy provisions, which are specifically addressed by section 57A–2–719(3), are subject to the general unconscionability requirements prescribed in section 57A–2–302.[3] *See*

---

**3.** Section 57A–2–302 states:

(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

*Schmaltz,* 431 N.W.2d at 662; *Hanson v. Funk Seeds Int'l,* 373 N.W.2d 30, 34 (S.D. 1985). *See also* 5 R. Anderson, *Anderson on the Uniform Commercial Code* § 2-719:30, at 18 (3d ed.1984) (whether an exclusion of consequential damages is unconscionable is to be determined in the same manner as under UCC § 2-302); 1 J. Wright & R. Summers, *Uniform Commercial Code* § 12-11, at 608 n. 9 (3d ed.1988) (section 2-302(1) presumably applies to 2-719(3) by virtue of the cross reference in the comments). Having ascertained that, in South Dakota, limitation of remedy provisions are subject to section 57A-2-302, we must now determine who makes the determination of unconscionability and the procedure under which the determination is made.

"Under SDCL 57A-2-302(1), the issue of unconscionability is a matter of law to be determined by the trial court." *Durham,* 315 N.W.2d at 701 n.* (citing *Johnson v. John Deere Co.,* 306 N.W.2d 231, 236 (S.D. 1981). Although the determination of unconscionability is a question of law, the South Dakota Supreme Court has been unclear as to what procedures satisfy the requirements of section 57A-2-302. *Compare Schmaltz,* 431 N.W.2d at 662 (the trial court is required to receive evidence of the commercial setting, purpose, and effect prior to the commencement of the trial) *with Hanson,* 373 N.W.2d at 34 (section 57A-2-302 requirements fulfilled where the trial court accepts pretrial memoranda and offers of proof at trial). Therefore, we resolve this issue as we believe it will be decided by the South Dakota Supreme Court when again faced with the alternative approaches.

■ Although the trial court never held a formal hearing, we do not agree with

Monsanto that reversible error was committed. First, section 57A-2-302 requires that the party be afforded only a reasonable opportunity to present evidence. Here, Monsanto had the opportunity to present such evidence when Herrick moved to exclude any reference to the limitation of remedy clause, when Monsanto moved for a directed verdict on the express warranty, and when the trial court presented the instructions to the parties. Second, sufficient evidence exists on the record concerning commercial setting, purpose, and effect of the clause to obviate the need for a hearing. *See* 2 R. Anderson, *Anderson on the Uniform Commercial Code* § 2-302:95, at 476 (3d ed.1982) (when all possible evidence is already in the record, a further hearing on the issue of unconscionability is unnecessary). Based on the evidence in the record, we can discern no reason to conduct a hearing when the state's highest court, in *Durham,* found unconscionability in an almost identical situation. Therefore, we hold that it was proper to instruct the jury that it could award consequential damages.

**B. Instruction on Unreasonableness of the Limitation of Remedy Provision**

■ Instruction No. 12[4] provided that limitation of warranty or remedy provisions are inoperative if they are unreasonable when construed in conjunction with a description of the goods. Monsanto argues that this instruction is a summary of S.D. Codified Laws Ann. § 57A-2-316(1) (1980)[5] and that this subsection applies only to disclaimers of warranty, not to limitations of remedy.

Even if we agreed with Monsanto that the district court erred in its instruction, a

---

4. Instruction No. 12 provided:

The buyer and seller may agree that there shall be limitations on the scope of the express warranties or on the remedies for breach of warranty. However, if such limitations are inconsistent with the description of the goods, then such limitations are not effective.

Such limitations are also inoperative if they would be unreasonable when construed with the description of the goods and the express warranties made.

5. Section 57A-2-316(1) provides:

(1) Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this chapter on parol or extrinsic evidence (§ 57A-2-202) negation or limitation is inoperative to the extent that such construction is unreasonable.

**598**

premise with which we do not agree for reasons not necessary for us to discuss, the error was harmless. If the jury complied with the instruction and determined that the limitation of remedy clause was inconsistent with the description of the goods, presumably limitations on remedy were erased from the minds of the jury. However, as our preceding discussion indicates, the trial court should have already stricken the limitation of remedy provision since it was unconscionable as a matter of law. Therefore, no harm was done. Thus, we conclude that the district court did not commit prejudicial error in giving Instruction No. 12.

### C. Failure to Instruct the Jury on Monsanto's Theory of the Case

■ The trial court refused to give Monsanto's proposed instruction[6] which purportedly set out Monsanto's theory of the case. Monsanto asserts that the instruction given[7] did not tell the jury what to do if it found that Herrick's crop failed because of his failure to follow the directions for use.

"When a proposed theory is supported by competent evidence, the trial court must instruct the jury on the applicable law, and failure to so instruct constitutes prejudicial error. * * * It is not error, however, to refuse to amplify instructions given which substantially cover the principle embodied in the requested instruction." *Kreager v. Blomstrom Oil Co.*, 379 N.W.2d 307, 309–10 (S.D.1985) (citations omitted). "Instructions are adequate when, considered as a whole, they give a full and correct statement of the applicable law." *Id.* at 310 (citations omitted).

We believe that Monsanto essentially requested an instruction on misuse of a product. Misuse "involve[s] using a product for an unintended function or using the product for its intended purpose but in an improper manner." *Peterson v. Safway Steel Scaffolds Co.*, 400 N.W.2d 909, 913 (S.D.1987). Misuse by a user of a product will bar recovery. *See Smith v. Smith*, 278 N.W.2d 155, 161 (S.D.1979). While misuse normally arises in the context of strict liability and the case at hand involves breach of warranty, in South Dakota there appears to be little difference between the two theories, apart from the warranty defenses of lack of notice, disclaimer, and perhaps lack of privity. *See Zacher v. Budd Co.*, 396 N.W.2d 122, 140 (S.D.1986). Although South Dakota has not addressed the question, we conclude that South Dakota would apply misuse in a breach of warranty case. Since we have some concerns about the lack of instruction on misuse, we

**6.** Monsanto's proposed instruction stated:

You are instructed that if you find from the evidence that the label on the Lasso II purchased and used by plaintiff contained legible, printed instructions specifying the manner in which the Lasso II could be safely used; that plaintiff had or should have had, notice and knowledge of the instructions prior to the use of the Lasso II; that plaintiff used the Lasso II in a manner contrary to the instructions concerning the use of the Lasso II; and that plaintiff's damages were a proximate result of the use of the Lasso II in a manner contrary to the instructions, you must return a verdict for the defendant.

**7.** Instruction No. 7 provided:

In this case, the plaintiff claims that in the Spring of 1985 he purchased a herbicide, LASSO II, manufactured by the defendant and intended by the defendant to be used by ultimate consumers for pre-emergence weed control in corn; that defendant expressly warranted said herbicide conformed to the chemical description on the label and was reasonably fit for use as directed thereon; that the plaintiff's purchase was made in reliance upon that express warranty; that he applied the herbicide in conformity with the instructions on the label but that it did not perform as warranted and damaged his corn crop; that within a reasonable time he notified the defendant of this breach of warranty; that the herbicide he purchased was not reasonably fit for use as a herbicide that would not damage the crop it was intended to protect; and that as a result of this breach of warranty the herbicide was of no value to him and it damaged him further by decreasing his crop yield.

By way of Answer, the defendant admits that it manufactures LASSO II and markets this product to dealers and denies all of the rest of plaintiff's claims. Defendant claims that the LASSO II purchased by plaintiff conformed with its warranty and that the damage to plaintiff's corn was caused by failure of the plaintiff to follow the directions for use which accompanied the product. Defendant asks that the plaintiff receive nothing under his claim.

next determine whether the instructions were nonetheless sufficient.

Whether a plaintiff should be foreclosed from recovery because his own action or inaction * * * contributed to his injury is a question that masquerades in many costumes. It appears in the clothing of contributory negligence, assumption of risk, and lack of proximate cause * * *. In the vernacular of strict tort liability, it is likely to be called misuse, abnormal use, or hypersensitivity. * * * [C]ourts should view the plaintiff's behavior and his peculiarities only as factors that may sufficiently attenuate the causal connection between defendant's act and plaintiff's injury to bar recovery.

1 J. White and R. Summers, *Uniform Commercial Code* § 11-8, at 541 (3d ed. 1988). We agree and view misuse in the present case as a question of proximate cause. The question of which party must carry the burden on the issue of misuse remains.

We find South Dakota law on this question confusing. *Compare Crandell v. Larkin & Jones Appliance Co.*, 334 N.W.2d 31, 34 (S.D.1983) (plaintiff negates his own misuse of the product) *with Smith*, 278 N.W.2d at 161 (recognition of assumption of the risk and misuse as defenses). It is of little consequence here because the burden of proof on proper usage was squarely placed on Herrick by Instructions Nos. 7 and 13.

In Instructions Nos. 7 and 13, the jury was instructed that the plaintiff had the burden of proving that breach of warranty was the proximate cause of the damages. In order to demonstrate that the breach was the proximate cause of the damages, it was necessary for Herrick to prove that he correctly followed instructions, that he did not misuse the herbicide. And, he successfully carried his burden. Therefore, Monsanto cannot complain that the jury was not instructed on its theory of the case and to its best advantage.

## III. CONCLUSION

We have carefully examined Herrick's cross-appeal on the issue of damages and find it to be without merit. For the foregoing reasons, we affirm the decision of the district court.