In the Matter of the ESTATE OF Jerry M. KNUDSEN, deceased, Burleigh County Probate No. 3107 Appeals from Order entered January 26, 1981.

Dann G. KNUDSEN and Eric J. Knudsen, as personal representatives of the estate of Jerry M. Knudsen, deceased; and Dann G. Knudsen, Eric J. Knudsen and Jeffrey Knudsen, Appellees,

v.

Susan F. KNUDSEN, one of the heirs at law of Jerry M. Knudsen, deceased, Appellant.

Civ. No. 10427.

Supreme Court of North Dakota.

Jan. 4, 1984.

E.J. Rose, Bismarck, for appellees; argued by E.J. Rose.

Mills & Moore, Bismarck, for appellant; argued by William R. Mills, Bismarck.

PEDERSON, Justice.

Susan F. Knudsen was decreed by the probate court to be an omitted spouse entitled to an intestate share in the estate of her late husband, Jerry M. Knudsen. On appeal to the district court, a trial de novo to a jury resulted in a special verdict that transfers of property to Susan outside the will were intended by Jerry to be in lieu of a testamentary provision for her. Susan appealed from the judgment entered upon the verdict. We affirm.

In 1962, Jerry executed his only will devising his entire estate to his wife at the time, Lela Margaret Knudsen. The will provided that in the event Lela predeceased Jerry, or if they died simultaneously, the entire estate would pass to Jerry and Lela's sons, Jeffrey, Dann, and Eric. In 1975, Jerry divorced Lela and married Susan but never changed or supplemented his 1962 will. In 1979, while married to Susan, Jerry died in a hunting-boating accident.

Susan was the named beneficiary in several life insurance policies and she was a

joint owner with Jerry of several items of property.

This is the second time that the question, whether or not Jerry intended to provide for Susan outside of his will when he named her beneficiary on his life insurance policies and joint tenant on several items of property, has been before this court. We held previously that a mere showing that the amount of the benefits provided Susan outside of the will exceeded one-third of the augmented estate, did not warrant a conclusion, as a matter of law, that Jerry intended those benefits to be in lieu of any testamentary provision for Susan. We remanded the case to the district court for trial de novo with a jury. *See Matter of Estate of Knudsen,* 322 N.W.2d 454 (N.D. 1982).

At the conclusion of the trial after remand, the jury answered affirmatively the following Special Verdict question: "Did Jerry intend one or more of the transfers of property made to Susan outside the Will to be in lieu of making any testamentary provision for her?"

## JURISDICTION

Before reaching the merits, we first consider Susan's claim that the judgment entered by the district court is void because the court lacked subject matter jurisdiction.

At the time these proceedings were commenced, district courts clearly had jurisdiction over appeals from probate courts pursuant to §§ 27–05–06(4) and 30.1–02–02(2), NDCC, and Chapter 30–26, NDCC. Chapter 30–26 was repealed and §§ 27–05–06(4) and 30.1–02–02(2) were amended effective January 1, 1983. *See* § 51, Ch. 319, S.L. 1981; § 51, Ch. 320, S.L.1981; § 64, Ch. 82, S.L.1983; § 2, Ch. 352, S.L.1983. Although it may be otherwise argued, we will presume for the purposes of this case that district courts generally, on January 1, 1983, lost jurisdiction over appeals taken after that date from county probate courts.

When this case was here before, we noted that under the constitution, appellate jurisdiction of the district court may be provided by law or by rule of the Supreme Court. If direct appeals from probate courts to this court create the nightmare that has been predicted, this court has the power, apparently, to restore all probate appeals to the district court. *See Matter of Estate of Knudsen, supra,* 322 N.W.2d at 456.

The appeal to the district court in this case was taken in 1981. The trial was not held and the judgment was not entered by the district court until February 1983. Susan argues that after January 1, 1983, the district court had no power other than to remand the case to the Burleigh County Court. We do not agree.

In *Staehling v. Schneider,* 545 S.W.2d 273, 274 (Tex.Civ.App.1976), a case which is in many respects similar to this case, the court stated:

"Generally, where a right of action or a remedy is derived from a statute which is subsequently repealed, and the repealing statute contains no savings clause in favor of pending suits, the right of action or remedy is lost unless relief has been granted before the effective date of the repeal....

"Where, however, the right of appeal has become perfected upon performance of the specified statutory requirements, the court of review retains jurisdiction over the appeal unless the repealing statute indicates a contrary legislative intent."

It can be stated as a general rule that where there has been a statutory change of jurisdiction, the court which had validly acquired jurisdiction in a specific case before the enactment, generally does not lose that jurisdiction on the effective date of the statute unless loss of jurisdiction is clearly expressed. *See* 20 Am. Jur.2d *Courts* § 150 (1965); 21 C.J.S. *Courts* § 92 (1940).[1] Because the legisla-

---

1. *Accord Berg v. Traeger,* 210 Cal. 323, 325–326, 292 P. 495, 496 (1930); *Willen v. Boggs,* 21 Cal.App.3d 520, 522 n. 1, 97 Cal.Rptr. 917, 918 n.

1 (1971); *Atkins v. Rayburn,* 506 S.W.2d 208, 209 (Tex.1974); *Cluck v. Ballenger,* 543 S.W.2d 159, 161 (Tex.Civ.App.1976).

ture did not mention cases pending on appeal to the district courts, it is deemed that there was no legislative intent to strip the district courts of jurisdiction of probate court appeals which had been perfected before January 1, 1983.

The district court had subject matter jurisdiction to try the instant case and to enter judgment thereon.

## MERITS

Susan argues that the trial court erred in its jury instruction regarding "transfers" under § 30.1-06-01(1)(2-301), NDCC, which provides:

"*30.1-06-01(2-301). Omitted spouse.—* 1. If a testator fails to provide by will for his surviving spouse who married the testator after the execution of the will, the omitted spouse shall receive the same share of the estate he would have received if the decedent left no will unless it appears from the will that the omission was intentional or the testator provided for the spouse by transfer outside the will and the intent that the transfer be in lieu of a testamentary provision is shown by statements of the testator or from the amount of the transfer or other evidence."

The trial court instructed the jury as follows:

"(5) That Jerry made a number of transfers outside his Will to Susan. As beneficiary named by Jerry in several life insurance policies, she received the proceeds of the policies payable on his death. As surviving joint owner, she became on his death sole owner of several joint bank accounts. As surviving joint-tenant, she became on his death sole owner of other properties held by Jerry and her in joint-tenancy."

Susan argues that the trial court erred because life insurance benefits and joint tenancy properties are not "transfers" within the purview of § 30.1-06-01(2-301), NDCC.

The word "transfer" is not defined in Title 30.1, NDCC. Where there is doubt as to the meaning of a word in a statute, courts may properly "refer to cognate or related legislation to determine the sense in which the word was employed" in the statute. Syllabus by the court in *Grabow v. Bergeth,* 59 N.D. 214, 215, 229 N.W. 282, 283 (1930). *See also Thielen v. Kostelecky,* 69 N.D. 410, 416, 287 N.W. 513, 516 (1939) ["The meaning of a word in a given sentence or clause may be affected not only by the context, but also by the subject to which it is applied."]

Although the Editorial Board Comment to § 30.1-06-01(2-301), NDCC, makes no mention of life insurance benefits and joint tenancy properties as constituting "transfers" for purposes of the statute, the Comment states that "[t]he effect of this section should be to reduce the number of instances where a spouse will claim an elective share." As pointed out by Justice Sand in his specially concurring opinion in *Matter of Estate of Knudsen, supra,* under § 30.1-05-02(2-202), NDCC, the augmented estate statute, the Editorial Board Comment states that "life insurance proceeds payable to the surviving spouse are included in the second category [of transfers to other persons], because it seems unfair to allow a surviving spouse to disturb the decedent's estate plan if the spouse has received ample provision from life insurance." The Editorial Board Comment to the pretermitted children statute, § 30.1-06-02(2-302), NDCC, which contains language similar to that used in the omitted spouse section, also speaks of "nonprobate transfers such as life insurance or joint accounts...."

We are also directed by § 30.1-01-02(1)(1-102), NDCC, to construe Title 30.1 "to promote its underlying purposes and policies." One of the purposes and policies of Title 30.1 is "[t]o make uniform the law among the various jurisdictions." § 30.1-01-02(2)(e)(1-102), NDCC. The Uniform Probate Code Practice Manual provides some illumination on the intended effect of the omitted spouse statute:

"The provisions of Part 3 of Article II are intended to protect the spouse and

children in the enumerated situations only if the omission was unintentional. Hence, the Code permits, within certain limits, evidence to establish whether the testator would have wanted a share for the spouse or child. In the case of a spouse married after the execution of the will, it must appear from the will that the omission was intentional or that the testator may have provided for the spouse by *transfer outside the will, such as life insurance or joint tenancy arrangements.* In such cases the intent of the testator that these transfers be in lieu of a testamentary provision may be shown by evidence of the testator's statements or the amount of the transfer, or other evidence...." [Emphasis added.] 1 Uniform Probate Code Practice Manual 115 (2d ed. 1977).

We also note that courts in Arizona and New Mexico, jurisdictions which have also adopted the Uniform Probate Code, have recognized that life insurance payable to a spouse and joint tenancy property with a right of survivorship can be included as "transfers" within the meaning of the omitted spouse section. *See Matter of Estate of Beaman,* 119 Ariz. 614, 617–618, 583 P.2d 270, 273–274 (Ct.App.1978); *Matter of Estate of Taggart,* 95 N.M. 117, 123–124, 619 P.2d 562, 568–569 (Ct.App.1980). *See also* Annot., 11 A.L.R. 4th 1213 (1982).

We conclude that life insurance benefits and joint tenancy arrangements constitute "transfers" for the purposes of the omitted spouse statute.[2] It is evident that through its adoption of the Uniform Probate Code, the legislature did not intend the literal definition of "transfer" found in § 47–09–01, NDCC, to apply to Title 30.1. Nor do §§ 47–10–23.1 and 47–11–16, NDCC, affect our conclusion. It appears these statutes were enacted "for purposes of chapter 57–37.1" which relates to estate taxes. *See* § 3, Ch. 483, S.L.1979. We note that "the objectives of a tax law are different from those involved ... in the Probate Code...." § 30.1–05–02(2–202), NDCC, Editorial Board Comment. The trial court's instruction was not erroneous.

Susan also contends that the district court erred in instructing the jury that the amount of the transfers alone could be the basis for determining if Jerry intended the transfers to be in lieu of a testamentary provision. After essentially tracking the statutory language of § 30.1–06–01(1)(2–301), NDCC, the district court instructed the jury as follows:

"In this case, there is nothing in Jerry's will that indicates that the omission of Susan was intentional. The Petitioners contend rather that Susan does not qualify for an intestate share under the foregoing provision of the law for the reason that Jerry provided for her by transfers of property outside the will and that his intent that the transfers be in lieu of a testamentary provision is shown, not by statements of Jerry, but from the amount of the transfers or other evidence. This contention of the Petitioners is refuted by Susan, thus present-

---

**2.** The court in *Taggart, supra,* appears to have taken the position that whether or not a "transfer" itself has occurred within the context of the omitted spouse section, at least with regard to joint tenancy properties, is a question properly left to the jury and distinct from the question whether or not the "transfer" was intended to be in lieu of a testamentary provision. The court explained that "[i]f [the surviving spouse] was merely given access to those funds to provide a convenient method for managing the couple's expenses, it was not a transfer to her." *Taggart, supra,* 95 N.M. at 123–124, 619 P.2d at 568–569.

We do not believe that such a fine distinction between a "transfer" and the intent that the "transfer" be in lieu of a testamentary provision need be drawn or submitted for the jury's deter-

mination. A litigant's contention, and a jury's determination, that a spouse was given access to joint tenancy funds in order to provide a convenient method for managing a couple's expenses seems to us to be more appropriately dealt with in regard to the intent that a "transfer" was in lieu of a testamentary provision rather than in regard to whether or not a "transfer" has in fact occurred.

We conclude that the trial court properly instructed the jury that the life insurance benefits and joint tenancy properties were in fact "transfers" outside the will as a matter of law, while leaving for the jury the ultimate determination of whether or not it can be determined from the amount alone that the transfers were intended to be in lieu of a testamentary provision.

ing the issue of Jerry's intent for your determination.

\* \* \* \* \* \*

"It is for the jury to determine whether the amount of property transferred in this case is sufficient to give rise to the inference that Jerry intended one or more of the transfers to be in lieu of making any testamentary provision for Susan."

 In the previous appeal, this court held that the district court erred in concluding on summary judgment that the intent that a transfer to a spouse outside of the will is in lieu of a testamentary provision can be shown *as a matter of law* by an amount which exceeds one-third of the augmented estate pursuant to § 30.1–05–01(2–201), NDCC. *Matter of Estate of Knudsen, supra.* We did not hold that a trier of fact cannot determine from the amount of the transfers alone whether or not the decedent intended that the transfers be in lieu of a testamentary provision. Section 30.1–06–01(1)(2–301), NDCC, specifically provides that this intent may be shown "from the amount of the transfer or other evidence." The trial court properly instructed the jury in this regard.

In a related contention, Susan argues that the evidence was insufficient to sustain the jury's verdict. Jeffrey, Dann, and Eric introduced evidence that Susan received, as the beneficiary of several life insurance policies[3] and as the survivor in several joint tenancy properties, a total of more than $437,000. The sons also estimated the total net worth of Jerry's estate to be approximately $80,000, an amount which Susan disputed. Susan also introduced testimony indicating that Jerry did

not intend these life insurance policies and joint tenancy properties to be in lieu of a testamentary provision.

 This court will not invade the province of the jury to weigh evidence or to determine the credibility of witnesses. *Powers v. Martinson,* 313 N.W.2d 720, 728 (N.D.1981). In reviewing the evidence, we view it in the light most favorable to the verdict and if there is substantial evidence to support the verdict, we will not set it aside. *Powers, supra.* We conclude that there was substantial evidence to support the jury's verdict.

Susan has also attacked several other jury instructions and trial court rulings on the admission and exclusion of evidence during the trial. She cites no authority to support her contentions and thus it is difficult to ascertain the bases for her arguments.

 In any event, a trial court need not give instructions in the specific language requested by a litigant. Instructions which fairly inform the jury of the applicable law are all that is required. *State v. Dachtler,* 318 N.W.2d 769, 774 (N.D.1982); *South v. National R.R. Passenger Corp.,* 290 N.W.2d 819, 825–826 (N.D.1980). This court has also held that no error in either the admission or exclusion of evidence and no error or defect in any ruling or in anything done or omitted by the court or by any of the parties is ground for setting aside a verdict "unless refusal to take such action appears to the court to be inconsistent with substantial justice." Syllabus by the court in *Intlehouse v. Rose,* 153 N.W.2d 810, 812 (N.D. 1967). Counsel has pointed to nothing

---

3. One of these life insurance policies was involved in the recent case of *McCarney v. Knudsen,* 342 N.W.2d 380 (N.D.1983). In *McCarney,* we held that the sons did not establish by clear and convincing evidence an implied trust requiring Susan to use $130,000 in proceeds from a life insurance policy to satisfy a debt of the estate. The jury in the instant case was made aware that the proceeds from this insurance policy were the subject of litigation in another action. The possible anomaly in trying these

actions separately was pointed out in *McCarney, supra,* 342 N.W.2d at 381 n. 1.

We also note that this life insurance policy was nominally taken out by Jerry's professional corporation. Susan has not argued that because the policy was taken out in the name of the corporation, it did not constitute a transfer *by the testator,* and we therefore do not decide the issue today.

which occurred during the trial that requires us to disturb the jury's verdict.

The judgment is affirmed.

VANDE WALLE, Acting C.J., GIERKE and SAND, JJ., and ILVEDSON, Surrogate Judge, concur.

ILVEDSON, Surrogate Judge, sitting in place of ERICKSTAD, C.J., disqualified.