CONSTRUCTION ASSOCIATES, INC., a North Dakota corporation, Plaintiff and Appellee,

v.

FARGO WATER EQUIPMENT COMPANY, Defendant and Appellee,

and

Johns–Manville Sales Corporation, Defendant and Appellant.

Civ. No. 10154.

Supreme Court of North Dakota.

Aug. 28, 1989.

Vogel, Brantner, Kelly, Knutson, Weir & Bye, Ltd., Fargo, for plaintiff and appellee; argued by John D. Kelly, Fargo.

Arvesen, Lundeen, Hoff, Svingen, Athens & Russell, Fergus Falls, for defendant and appellee; argued by Thomas C. Athens, Fergus Falls.

Larry D. Espel (argued), of Popham, Haik, Schnobrich, Kaufman & Doty, Minneapolis, and Stephen W. Plambeck (appearance), of Nilles, Hansen & Davies, Ltd., Fargo, for defendant and appellant.

ERICKSTAD, Chief Justice.

Johns–Manville Sales Corporation [J–M] appealed from a district court judgment

entered upon a jury verdict finding it liable for $140,000 in damages for defective pipe. We affirm.

In 1977 Construction Associates, Inc., was the successful bidder to construct a water supply line for the city of Breckenridge, Minnesota. Construction Associates purchased from Fargo Water Equipment [Fargo Water] a large supply of polyvinyl chloride [PVC] pipe manufactured by J–M. The Breckenridge pipeline was completed during the summer of 1978.

The line eventually developed numerous leaks. J–M sent a technical field specialist to Breckenridge in August 1978. On his recommendation, the line was pumped to a high pressure using a fire engine in an attempt to set the rubber gaskets in the joints. This temporarily remedied the problem, but additional leaks soon occurred. Fargo Water recommended repairs using bell clamps, which Construction Associates attempted without success.[1] Finally, Construction Associates repaired the leaks as they were discovered by removing the defective joints and replacing them with stainless steel sleeves. At the time of trial in 1981,[2] seventy leaks had been discovered and repaired.

Construction Associates brought this action against J–M and Fargo Water, asserting that the pipe was defective and that the defects caused the leaks in the Breckenridge line. J–M asserted that the leaks were caused by stones and debris which had lodged in the pipe joints due to faulty installation by Construction Associates. The jury found that the pipe was defective and that the defects had caused the leaks. The jury awarded Construction Associates $140,000 for its expenses in repairing the line against J–M and Fargo Water. Fargo Water was given indemnification against J–M. The trial court denied the defendants' motions for judgment notwithstanding the verdict and for a new trial, and

judgment was entered upon the jury verdict. J–M appealed.

The following issues are dispositive of the appeal:

(1) Is the jury verdict supported by substantial evidence?

(2) Did the trial court commit reversible error in its evidentiary rulings?

(3) Was the trial court's denial of J–M's motion for a continuance reversible error?

(4) Was the clause limiting remedies and excluding consequential damages unconscionable?

## I. SUFFICIENCY OF THE EVIDENCE

J–M asserts that the jury verdict finding its pipe defective is against the greater weight of the evidence and should be set aside. The essence of J–M's argument is that the opinion testimony of Construction Associates' expert witness, Marshall Moore, was speculative and not as scientifically accurate as the opinions of J–M's expert witnesses.

The record shows that Moore is a civil engineer experienced with municipal utility systems. He was familiar with the problems in the Breckenridge line and had inspected it. He also inspected and conducted tests upon many of the pipe joints which were removed because of leakage. Moore opined that the J–M pipe did not meet J–M's own product specifications, and that imperfections and deformities in the joints of the pipe caused the leaks in the Breckenridge line. J–M did not object to Moore's opinion testimony.

Not surprisingly, J–M's expert witnesses had a markedly different view of the cause of the leaks. J–M's primary expert, Herbert Vinson, testified that, in his opinion, the leaks were caused by the introduction of rocks and debris into the gasket area of the pipe joints at the time of construction.

---

1. The jury found that the bell clamps' recommended and sold by Fargo Water were defective and not fit for their intended purpose, and awarded Construction Associates $20,000 in damages caused by the attempt to repair the line with bell clamps. Fargo Water has not appealed from the judgment.

2. The lengthy delay between trial and disposition of this appeal resulted from J–M's filing of a bankruptcy petition in 1982, after J–M had filed its notice of appeal.

J–M's experts also testified about numerous tests conducted upon the pipe, which, J–M asserts, demonstrates scientifically that the pipe joints would not leak if properly assembled.[3]

When the sufficiency of the evidence to support a jury verdict is challenged, we will not invade the province of the jury to weigh the evidence or to determine the credibility of witnesses. *Matter of Estate of Knudsen*, 342 N.W.2d 387, 392 (N.D. 1984). Our review of questions of fact is limited to consideration of whether there is substantial evidence to sustain the jury's verdict. *Johnson v. Northwestern Bell Telephone Co.*, 338 N.W.2d 622, 625 (N.D. 1983). In making that determination, we view the evidence in the light most favorable to the verdict. *Matter of Estate of Knudsen, supra,* 342 N.W.2d at 392; *Johnson v. Northwestern Bell Telephone Co., supra,* 338 N.W.2d at 625.

The jury was presented with a classic battle of the experts. *See, e.g., State v. Skjonsby,* 417 N.W.2d 818, 821 (N.D.1987). It is well-settled that the credibility of expert witnesses, and the weight to be given their testimony, are matters to be determined by the trier of fact. *E.g., State v. Skjonsby, supra,* 417 N.W.2d at 821; *Stillwell v. Cincinnati Inc.,* 336 N.W.2d 618, 621 (N.D.1983); *Gardebring v. Rizzo,* 269 N.W.2d 104, 109 (N.D.1978). The weakness or nonexistence of a basis for an expert's opinion goes to the expert's credibility, which is a matter for the trier of fact. *Dodds v. North Dakota State Highway Commissioner,* 354 N.W.2d 165, 170 (N.D. 1984).

The jury in this case made a choice between two permissible views of the weight of the evidence. *See State v. Skjonsby, supra,* 417 N.W.2d at 821. Viewing the evidence in the light most favorable to the verdict, we conclude that there was substantial evidence to support the verdict.

## II. EVIDENTIARY ERRORS

J–M asserts that it was prejudiced by several erroneous evidentiary rulings by the court. J–M challenges the exclusion of opinion testimony from two of its witnesses, the admission of opinion testimony of the owner of Construction Associates, the admission of testimony regarding Construction Associates' reputation, and the admission of a piece of a competing manufacturer's pipe illustrative of other pipe which had been used in the Breckenridge line. A detailed discussion of each of these alleged errors would serve no purpose. We have reviewed the record and we conclude that the trial court did not commit reversible error in the challenged rulings.

## III. CONTINUANCE

J–M asserts that the trial court erred in denying its motion for a continuance made one week before trial. J–M argues that it was unable to adequately prepare its defense without the continuance because Construction Associates had been dilatory in responding to discovery requests, identifying its expert witnesses, and delineating its theory of liability. J–M also asserts a continuance was necessary because new leaks had developed in the Breckenridge line and more time was needed to investigate these new leaks.

A party's request for a continuance is a matter within the trial court's discretion, and we will not on appeal overturn its decision absent an abuse of discretion. *Matter of Bo,* 365 N.W.2d 847, 852 (N.D. 1985). A trial court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner. *E.g., Ward v. Shipp,* 340 N.W.2d 14, 17 (N.D.1983).

The trial court was in a much better position than we are to evaluate J–M's assertions of dilatory and obstructionary discovery tactics by Construction Associates' counsel. J–M points to no arbitrary, unreasonable, or unconscionable action by the court. We conclude that the court did not abuse its discretion in denying J–M's motion for a continuance.

---

**3.** J–M's counsel conceded at oral argument that these tests did not exactly simulate an under- ground water pipeline system.

## IV. UNCONSCIONABILITY

J–M asserts that the trial court erred in concluding that a clause limiting the remedies available upon breach of its warranty and specifically excluding liability for consequential damages was unconscionable.

Construction Associates purchased the pipe from Fargo Water, and at the time of contracting had no direct contact with J–M. J–M shipped the pipe directly to the job site in Breckenridge. Included with each shipment of pipe was an installation guide, which expressly stated that it was "written especially for the installer and those who direct the actual handling and installation of Johns–Manville PVC Pressure Rated Pipe." On page three of the installation guide J–M expressly warranted the pipe to be free from defects in workmanship and materials. A limitation of liability clause was also included:

"Limitation of Liability

"It is expressly understood and agreed that the limit of J–M's liability shall be the resupply of a like quantity of nondefective Product and that J–M shall have no such liability except where the damage or claim results solely from breach of J–M's warranty. IT IS ALSO AGREED THAT J–M SHALL NOT BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL, OR OTHER DAMAGES FOR ANY ALLEGED NEGLIGENCE, BREACH OF WARRANTY, STRICT LIABILITY, OR ANY OTHER THEORY, OTHER THAN THE LIMITED LIABILITY SET FORTH ABOVE."

The first sentence of the clause is essentially a limitation of remedies. The second sentence is a specific exclusion of consequential or incidental damages.[4]

J–M asserted the provisions of the clause as a defense, arguing that it could only be held liable for replacement of defective pipe. The trial court determined that the limitation of remedies and exclusion of damages were unconscionable and therefore unenforceable.[5] The court accordingly submitted the case to the jury allowing the full complement of damages available under Chapter 41–02, N.D.C.C., and the jury returned its verdict awarding damages based upon the actual cost of repairing the leaking joints with stainless steel sleeves.

Section 41–02–98, N.D.C.C. [U.C.C. § 2–719] specifically allows the parties to an agreement to limit the remedies available upon breach and to exclude consequential damages:

"*41–02–98. (2–719) Contractual modification or limitation of remedy.*

"1. Subject to the provisions of subsections 2 and 3 of this section and of section 41–02–97 on liquidation and limitation of damages:

"a. The agreement may provide for remedies in addition to or in substitution for those provided in this chapter and may limit or alter the measure of damages recoverable under this chapter, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts; and

"b. Resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

\*      \*      \*      \*      \*      \*

"3. Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limi-

---

**4.** The parties have not specifically raised the issue whether the damages incurred here, costs of digging up the line and repairing the pipe with stainless steel sleeves, constitute consequential or incidental damages. *See* Section 41–02–94, N.D.C.C. [U.C.C. § 2–715]; *Frank's Maintenance & Engineering, Inc. v. C.A. Roberts Co.,* 86 Ill.App.3d 980, 42 Ill.Dec. 25, 31, 408 N.E.2d 403, 409 (1980); 1 White & Summers, Uniform Commercial Code §§ 10–3, 10–4 (3d ed. 1988). We will not address the issue but

will, as did the parties, treat them as consequential damages for purposes of this appeal.

**5.** The trial court also determined that the limitation of remedies failed of its essential purpose. *See* Section 41–02–98(2), N.D.C.C. [U.C.C. § 2–719(2) ]. Because we conclude that the trial court did not err in determining that the limitation of remedies was unconscionable, we find it unnecessary to address the separate issue of failure of essential purpose.

tation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not." The Official Comment to Section 2–719 cross-references to Section 2–302, codified in this state at Section 41–02–19, N.D.C.C.:

"41–02–19. (2–302) *Unconscionable contract or clause.*

"1. If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

"2. When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination."

By its terms, Section 2–302 applies to any clause of the contract. Courts thus have construed Sections 2–302 and 2–719 together in holding that a general limitation of remedies clause, including those limiting liability to repair or replacement, may be subject to unconscionability analysis under the Code.[6] *E.g., Hightower v. General Motors Corp.,* 175 Ga.App. 112, 332 S.E.2d 336, 338 (1985), *aff'd,* 255 Ga. 349, 338 S.E.2d 426 (1986); *Earl M. Jorgensen Co. v. Mark Construction, Inc.,* 56 Hawaii 466, 540 P.2d 978, 984 (1975); *Frank's Maintenance & Engineering, Inc. v. C.A. Roberts Co.,* 86 Ill.App.3d 980, 42 Ill.Dec. 25, 32, 408 N.E.2d 403, 410 (1980); *Hahn v. Ford Motor Co., Inc.,* 434 N.E.2d 943, 951–952 (Ind.Ct.App.1982); *McCarty v. E.J. Korvette, Inc.,* 28 Md.App. 421, 347 A.2d 253, 260–261 (1975); *Equitable Lumber Corp. v. IPA Land Development Corp.,* 38

N.Y.2d 516, 344 N.E.2d 391, 394, 381 N.Y. S.2d 459, 462 (1976); *Hanson v. Funk Seeds International,* 373 N.W.2d 30, 34 (S.D.1985). *See also* U.C.C. § 2–719, Official Comment; Samuels, *The Unconscionability of Excluding Consequential Damages Under the Uniform Commercial Code When No Other Meaningful Remedy Is Available,* 43 U.Pitt.L.Rev. 197, 242 (1981).

■ The determination whether a particular contractual provision is unconscionable is a question of law for the court. Section 41–02–19, N.D.C.C. [U.C.C. § 2–302]; *Ray Farmers Union Elevator Co. v. Weyrauch,* 238 N.W.2d 47, 50 (N.D. 1975); *Haugen v. Ford Motor Co.,* 219 N.W.2d 462, 467 (N.D.1974). The court is to look at the contract from the perspective of the time it was entered into, without the benefit of hindsight. *Ray Farmers Union Elevator v. Weyrauch, supra,* 238 N.W.2d at 50; 1 White & Summers, *supra,* § 4–3. The determination to be made is whether, under the circumstances presented in the particular commercial setting, the terms of the agreement are so one-sided as to be unconscionable. *Peoples Bank and Trust v. Reiff,* 256 N.W.2d 336, 344 (N.D.1977); *Haugen v. Ford Motor Co., supra,* 219 N.W.2d at 467; U.C.C. § 2–302, Official Comment. The principle underlying the Code's unconscionability provisions is the prevention of oppression and unfair surprise. *Peoples Bank and Trust v. Reiff, supra,* 256 N.W.2d at 344; *Haugen v. Ford Motor Co., supra,* 219 N.W.2d at 467; U.C.C. § 2–302, Official Comment.

Courts and commentators have generally viewed the Code's unconscionability provisions within a two-pronged framework: procedural unconscionability, which encompasses factors relating to unfair surprise, oppression, and inequality of bargaining power, and substantive unconscionability, which focuses upon the harshness or one-sidedness of the contractual provision in question. *See, e.g., A & M Produce Co. v.*

---

6. Because we are dealing with a limitation of remedies, rather than a disclaimer of warranty, we need not address any potential conflict with Section 41–02–33, N.D.C.C. [U.C.C. § 2–316].

*See A & M Produce Co. v. FMC Corp.,* 135 Cal. App.3d 473, 186 Cal.Rptr. 114, 118–119 n. 3 (1982); 1 White & Summers, *supra,* § 12–11.

*FMC Corp.,* 135 Cal.App.3d 473, 186 Cal. Rptr. 114, 121–122 (1982); *Frank's Maintenance & Engineering, Inc. v. C.A. Roberts Co., supra,* 42 Ill.Dec. at 31–32, 408 N.E.2d at 409–410; *Hahn v. Ford Motor Co., Inc., supra,* 434 N.E.2d at 951; *Matter of Friedman,* 64 A.D.2d 70, 407 N.Y.S.2d 999, 1008 (1978); 1 White & Summers, *supra,* §§ 4–3 to 4–7.

### A) Procedural Unconscionability

■ We initially note that this case presents a commercial, rather than a consumer, transaction. Although courts have generally been more reluctant to find unconscionability in purely commercial settings, *see Ray Farmers Union Elevator Co. v. Weyrauch, supra,* 238 N.W.2d at 50, under appropriate circumstances a contractual provision may be found unconscionable even in a commercial setting. *See, e.g., A & M Produce Co. v. FMC Corp., supra,* 186 Cal.Rptr. at 124; *Trinkle v. Schumacher Co.,* 100 Wis.2d 13, 301 N.W.2d 255, 259 (Ct.App.1980); 1 White & Summers, *supra,* § 4–9.

Courts' general skepticism of unconscionability claims in purely commercial transactions stems from the presumption that businessmen possess a greater degree of commercial understanding and substantially stronger economic bargaining power than the ordinary consumer. *A & M Produce Co. v. FMC Corp., supra,* 186 Cal. Rptr. at 124. Some courts, however, have recognized that disparity of bargaining power may exist even in traditional commercial transactions:

"Nevertheless, generalizations are always subject to exceptions and categorization is rarely an adequate substitute for analysis. With increasing frequency, courts have begun to recognize that experienced but legally unsophisticated businessmen may be unfairly surprised by unconscionable contract terms ... and that even large business entities may have *relatively* little bargaining power, depending on the identity of the other contracting party and the commercial circumstances surrounding the agreement."
*A & M Produce Co. v. FMC Corp., su-*

*pra,* 186 Cal.Rptr. at 124 [citations omitted].

■ The circumstances presented in this case demonstrate a substantial inequality in bargaining power between J–M and Construction Associates. Construction Associates is a relatively small local construction firm, while J–M is part of an enormous, highly diversified, international conglomerate. The limitation of remedies and exclusion of damages were part of a pre-printed installation guide included with all shipments of J–M Pipe. J–M has continually stressed on appeal that those limitations and exclusions are included in all of its brochures and guides. It is obvious that there is no room for bargaining or negotiation as to the warranty provisions.

We also note that the facts in this case demonstrate an actual lack of negotiation coupled with elements of unfair surprise. The situation here is somewhat analogous to that presented in *Frank's Maintenance & Engineering, Inc. v. C.A. Roberts Co., supra,* 42 Ill.Dec. at 32, 408 N.E.2d at 410, where the court reasoned:

"To be a part of the bargain, a provision limiting the defendant's liability must, unless incorporated into the contract through prior course of dealings or trade usage, have been bargained for, brought to the purchaser's attention or be conspicuous.... If not, the seller has no reasonable expectation that the remedy was being so restricted and the restriction cannot be said to be part of the agreement of the parties.... Nor does the mere fact that both parties are businessmen justify the utilization of unfair surprise to the detriment of one of the parties since the Code specifically provides for the recovery of consequential damages and an individual should be able to rely on their existence in the absence of being informed to the contrary either directly or constructively through prior course of dealings or trade usage.... This requirement that the seller obtain the knowing assent of the buyer 'does not detract from the freedom to contract, unless that phrase denotes the freedom to impose the onerous terms of one's

carefully-drawn printed document on an unsuspecting contractual partner. Rather, freedom to contract is enhanced by a requirement that both parties be aware of the burdens they are assuming. The notion of free will has little meaning as applied to one who is ignorant of the consequences of his acts.'" [Citations omitted].

The limitations and exclusions clause in this case can hardly be described as "bargained for."[7] The clauses were included on page three of a pre-printed installation guide expressly directed to the worker in the field, rather than to officers of Construction Associates. Construction Associates was not apprised at the time of contracting that their remedies under the Code were being limited or excluded.[8] It would be within J–M's control to do so by, for example, requiring its dealers to accept orders for pipe only upon a J–M form which included the limitations and exclusions and which required the purchaser's signature. Clearly an element of procedural unconscionability is present where J–M took advantage of its superior bargaining power to dictate terms through a pre-printed guide which was not provided to Construction Associates (and then only to field workers) until long after the sales contract had been finalized.

### B) Substantive Unconscionability

Substantive unconscionability focuses upon the harshness of the particular contractual terms:

"Substantive unconscionability concerns the question whether the terms themselves are commercially reasonable.... While the Code permits the limitation of remedies, it must be remembered that it disfavors them and specifically provides for their deletion if they would act to deprive a contracting party of reasonable protection against a breach.... The Code (Ill.Rev.Stat.1973), ch. 26, par. 1–106(1)), specifically provides that the remedies provided by it shall be liberally construed to the end that the aggrieved party may be put in as good a position as if the other party had fully performed." *Frank's Maintenance & Engineering, Inc. v. C.A. Roberts Co., supra,* 42 Ill.Dec. at 32, 408 N.E.2d at 410 [citations omitted].

Similarly, the Official Comment to Section 2–719 of the Code stresses that contractual provisions which would deprive a party of "minimum adequate remedies" for breach will not be enforced:

"However, it is of the very essence of a sales contract that at least minimum adequate remedies be available. If the parties intend to conclude a contract for sale within this Article they must accept the legal consequence that there be at least a fair quantum of remedy for breach of the obligations or duties outlined in the contract. Thus any clause purporting to modify or limit the remedial provisions of this Article in an uncon-

7. Construction Associates and Fargo Water argue that *Scientific Application, Inc. v. Delkamp,* 303 N.W.2d 71 (N.D.1981), and *Eichenberger v. Wilhelm,* 244 N.W.2d 691 (N.D.1976), require that limitations of remedies or exclusions of damages be part of the basis of the bargain of the contract of sale in order to be enforceable. Those cases involved disclaimers of warranties, not limitation of remedies or exclusion of damages. In *Fleck v. Jacques Seed Co.,* 445 N.W.2d 649, 654 (N.D.1989) we have reiterated that a disclaimer of warranty must be part of the basis of the bargain to be enforceable. The trial court did not address this issue, and we accordingly find it unnecessary to discuss its applicability under the circumstances presented here. Rather, we will consider the limitations and exclusions' status as part of the basis of the bargain only as a factor in determining unconscionability.

8. We note that David Lloyd, one of the owners of Construction Associates, testified that he had seen a J–M brochure at some unspecified time in the past, but he could not recall whether that brochure contained any language regarding warranties. Lloyd's viewing of the brochure apparently was prior to and unrelated to this project, and neither he nor any other representative of Construction Associates was apprised of any limitation of remedies or exclusion of damages regarding the J–M pipe purchased from Fargo Water until the installation guide was delivered with the pipe to the job site. J–M does not assert that this record evidences a course of dealing between the parties or trade usage. *See Frank's Maintenance & Engineering, Inc. v. C.A. Roberts Co., supra,* 42 Ill.Dec. at 32, 408 N.E.2d at 410.

scionable manner is subject to deletion and in that event the remedies made available by this Article are applicable as if the stricken clause had never existed."

The clause at issue here would limit Construction Associates' remedy for J–M's breach to a like quantity of replacement pipe, with no recovery of consequential damages. Construction Associates argues, with support in the evidence, that replacement pipe is not used when making repairs to leaking joints on a completed underground water pipeline. Because the accepted method of repair is to cut out the leaking joint and repair it with a stainless steel sleeve, Construction Associates argues, the replacement pipe would be useless in effecting repairs upon the line. The trial court determined that J–M's limited remedy "amount[ed] to nothing whatsoever." J–M has not pointed to any evidence in the record which refutes Construction Associates' contention or which in any manner suggests that replacement PVC pipe could be used to effect the necessary repairs on the leaking joints.

Numerous courts, in a variety of commercial and consumer contexts, have held limitations and exclusions unconscionable when they leave the non-breaching party with no effective remedy. *See, e.g., Herrick v. Monsanto Co.*, 874 F.2d 594, 596 (8th Cir.1989) (applying South Dakota law); *Majors v. Kalo Laboratories, Inc.*, 407 F.Supp. 20, 22–23 (M.D.Ala.1975) (applying Alabama law); *Hanson v. Funk Seeds International, supra*, 373 N.W.2d at 35; *Durham v. Ciba–Geigy Corp.*, 315 N.W.2d 696, 700–701 (S.D.1982); *Trinkle v. Schumacher Co., supra*, 301 N.W.2d at 259. *See generally* Samuels, *The Unconscionability of Excluding Consequential Damages Under the Uniform Commercial Code When No Other Meaningful Remedy is Available*, 43 U.Pitt.L.Rev. 197 (1981). This is particularly true where the defect in the product is latent,[9] so that the buyer is unable to discover the defect until additional damages are incurred. *See, e.g., Majors v. Kalo Laboratories, Inc., supra*, 407 F.Supp. at 23; *Frank's Maintenance & Engineering, Inc. v. C.A. Roberts Co., supra*, 42 Ill.Dec. at 33, 408 N.E.2d at 411. In this case, Construction Associates did not discover the defects until the pipe was assembled and placed underground.

The concept of unconscionability must necessarily be applied in a flexible manner, taking into consideration all of the facts and circumstances of a particular case. *Matter of Friedman, supra*, 407 N.Y.S.2d at 1008. The circumstances of this case demonstrate elements of procedural and substantive unconscionability which, when viewed in totality, adequately support the trial court's conclusion that the clause limiting remedies and excluding consequential damages was unconscionable under the relevant statutory provisions. The trial court therefore did not err in refusing to enforce the limitation of remedies and exclusion of consequential damages.

The judgment of the district court is affirmed.

GIERKE and MESCHKE, JJ., and VERNON R. PEDERSON, Surrogate Justice, concur.

VANDE WALLE, J., concurs in the result.

VERNON R. PEDERSON, Surrogate Justice, sitting in place of LEVINE, J., disqualified.

---

**9.** J–M asserts that any defects in its pipe were discoverable upon receipt, and thus were not latent defects. J–M bases this assertion upon Construction Associates' reliance upon the existence of small marks in the pipe joints to support its expert's theory of the case. Although these small marks may well have been discoverable, their significance was not obvious. J–M's assertion that the defect was discoverable, raised for the first time on this appeal, is disingenuous in light of its continuing assertion that the pipe was not defective.