Leslie Ann **ERICKSON**, Stacy Lee Erickson, Melissa Sue Erickson, Jennifer Marie Erickson and Gail Lynn Erickson, minors, by their Guardian and Conservator, Ramsey National Bank and Trust Co., Devils Lake, North Dakota, Plaintiffs and Appellants,

v.

Dennis **SCHWAN** and Barry Schwan individually, and d/b/a Schwan Enterprises & Trucking Co., and Timothy J. Regan, Defendants and Appellees.

Civ. No. 890204.

Supreme Court of North Dakota.

March 27, 1990.

Thompson & Thompson, Devils Lake, for plaintiffs and appellants; argued by Neil Thompson.

Traynor, Rutten & Traynor, Devils Lake, for defendants and appellees; argued by Thomas E. Rutten.

LEVINE, Justice.

·The children of Dale Erickson appeal from a district court judgment dismissing their wrongful death action against Dennis Schwan, Barry Schwan, and Timothy Regan. The Erickson children assert that the trial court erred in its instructions to the jury, that the jury committed misconduct, and that the evidence is insufficient to support the jury's verdict. We affirm.

Dale Erickson was the manager of the Farmers Union Elevator in Calvin, North Dakota. He had managed the elevator for many years and was responsible for establishing and implementing procedures for the loading and unloading of trucks in the elevator. Trucks were loaded on a scale in a narrow alleyway within the elevator. Under the procedure established by Erickson, the front hopper of the truck would be filled first by an overhead grain spout and, when an agreed-upon weight had been reached, the driver would move the truck forward approximately twenty feet so the rear hopper could be filled. The weight was shown on a large digital display located on the wall in the alleyway.

On August 4, 1987, Regan, an employee of the Schwans, drove a tractor-trailer truck to the elevator to pick up a load of grain. It was agreed that Regan would pull the truck forward when the scale reached approximately 52,000 pounds. It took approximately four minutes to load the front hopper.

As the front hopper of Regan's trailer was being loaded, Erickson went into the alleyway to unload the "pit." The pit was an underground storage area where grain from trucks was dumped until it could be transferred to one of the overhead storage bins. Trucks would dump their grain into the pit through grates in the center of the alleyway floor.

Erickson apparently went to the pit control levers, located behind and to the right of Regan's truck, and opened the "slides" or "gates" which allowed the grain in the pit to be transported up to the overhead storage bins. Mike Peterson, another elevator employee, was standing on a catwalk above the truck and saw Erickson walk to the left side of Regan's truck and look down into the pit through the grates. Erickson then hollered to Peterson that the pit was empty and Peterson saw Erickson walk toward the back of the truck. Erickson apparently went back to the controls near the right rear of Regan's truck and closed the slides.

When the scale reached 52,000 pounds, Regan pulled the truck ahead and the right rear wheels of the trailer ran over the full length of Erickson's body. No one witnessed how or why Erickson got in front of the truck's rear wheels.

Erickson's children brought this wrongful death action against Regan and the Schwans, asserting that Regan's negligence caused their father's death. The action was tried to a jury, which apportioned negligence at 90 percent to Erickson and 10 percent to Regan. The trial court, in accordance with Section 9–10–07, N.D.C.C., entered judgment dismissing the action. The court denied a motion for a new trial and the Erickson children appealed from the judgment.

## I. MOMENTARY FORGETFULNESS

The Erickson children assert that the trial court erred in refusing to give their requested instruction on momentary forgetfulness.

Momentary forgetfulness is a doctrine arising from the principles of contributory negligence. In essence, the doctrine provides that when a plaintiff voluntarily exposes himself to a danger of which he had previous knowledge, but momentarily forgets the danger, such forgetfulness is not contributory negligence unless, under all the circumstances, it shows a want of ordinary care not to have kept the danger in mind. See *Keller v. Vermeer Manufacturing Co.*, 360 N.W.2d 502, 504 (N.D. 1984); NDJI—Civil 1000, 1015. The doctrine has been recognized in this state since at least 1906 and we recently reaffirmed its validity in a products liability case.[1] *See, e.g., Keller, supra; Pyke v. City of Jamestown*, 15 N.D. 157, 107 N.W. 359 (1906).

The trial court gave the first half of NDJI—Civil 1015, on assumption of risk, but refused to give the second half of 1015, which covers momentary forgetfulness. The trial court determined that there was sufficient evidence from which the jury could infer that Erickson had knowledge of the danger and voluntarily assumed the risk, but that there was insufficient evidence to allow an inference that Erickson momentarily forgot the danger. The Erickson children assert that there was sufficient evidence to support an instruction on momentary forgetfulness.

Although the parties have not addressed the applicability of assumption of risk in a negligence case, we note that we have previously held that the Legislature's adoption of comparative negligence, Section 9–10–07, N.D.C.C., abolished the doctrine of assumption of risk as a defense in negligence actions. *First Trust Co. of North Dakota*

1. Neither party has challenged the viability of the doctrine, but only its application in this case.

v. *Scheels Hardware & Sports Shop, Inc.,* 429 N.W.2d 5, 9 (N.D.1988); *Feuerherm v. Ertelt,* 286 N.W.2d 509, 512 (N.D.1979); *Wentz v. Deseth,* 221 N.W.2d 101, 104–105 (N.D.1974). In *Scheels, supra,* we held that it was error to give the pattern jury instruction on assumption of risk in a negligence case.

In 1987, the Legislature enacted Chapter 32–03.2, N.D.C.C., which significantly revised tort liability law in this state. 1987 N.D.Sess. Laws ch. 404. Chapter 32–03.2 is applicable to claims for relief accruing after July 8, 1987, and therefore governs in this case.[2] Section 32–03.2–01, N.D.C.C., indicates that the focus for determining tort liability has been shifted from traditional, doctrinal labels to the singular, inclusive concept of "fault." Section 32–03.-2–02, N.D.C.C., includes not only negligence, but also assumption of risk within the definition of "fault" to be compared in an action for damages.

■■■ However, we find it unnecessary to address the effect of these statutes or our prior caselaw on the issue of the applicability of assumption of risk in a negligence case, because the instruction given by the district court has become the law of the case. The Erickson children did not assert that an assumption of risk instruction was inappropriate in this case, nor did they specifically object to the assumption of risk instruction given by the court. *See* Rule 51(c), N.D.R.Civ.P. An instruction not objected to becomes the law of the case. *E.g., Smith v. Anderson,* 451 N.W.2d 108, 113 n. 3 (N.D.1990).

The trial court determined that the evidence supported an instruction on assumption of risk, stating:

"I still have some reservations about it. As I said, that, just like the momentary forgetfulness, [assumption of risk] is an instruction that specifically goes to what was going on in the mind of the person who was injured. And when you read through it, assumption of risk says, 'If a person has actual knowledge of a situa-

tion fraught with danger,'—well, I think it's clear he had knowledge of the danger here, he worked in this place—'and having freedom of choice and an appreciation of the dangerous situation then existing,'—I don't think he was forced in any way to take the actions he did in moving around that truck at that particular time and place—again, I'm assuming the circumstantial evidence of his having worked there and managed the place for some years leads me to infer that he had an appreciation of the dangerous situation then existing and then freely and voluntarily exposes himself to the hazard before him, there is nothing to indicate that his actions were anything but free and voluntary.

"So, it seems to me that we do have the necessary elements present in the facts here that justify giving the assumption of risk instruction."

The court gave the following instruction:

"If a person has actual knowledge of a situation fraught with danger, and having freedom of choice and an appreciation of the dangerous situation then existing, freely and voluntarily exposes himself to the hazard before him and a mishap is proximately caused by the danger encountered, he assumes the risk of damages thereby sustained and the wrongdoer's liability is diminished. Such an assumption of a risk is a form of contributory fault.

"To have freedom of choice, the injured claimant, without violating any legal or moral duty, must have had a reasonably safe opportunity to avoid exposing himself to the danger confronting him."

■■■ We agree with the trial court that the evidence in this case could support an inference of each element of assumption of risk. The jury could infer that Erickson had knowledge and appreciation of the dangers involved in loading trucks from his long-time employment in the elevator, and from his knowledge that Regan's truck

---

**2.** The *Scheels* case involved an accident occurring prior to the effective date of Chapter 32–

03.2, N.D.C.C.

would move when the digital display reached 52,000 pounds, within a timespan of four minutes. The testimony of Erickson's actions in emptying the pit suggest that he was under no compulsion to act as he did and had freedom of choice in his actions at all times. The jury could also infer from Erickson's emptying the pit, checking the pit on the left side of Regan's truck, and operating the control levers near the right rear of the truck, that Erickson voluntarily exposed himself to the danger by placing himself in a position in front of the truck's right rear wheels to look down into the pit on that side. The evidence also supports an inference that the accident was proximately caused by the danger encountered. Consequently, the evidence, viewed as a whole, supported an instruction on assumption of risk.

 The Erickson children assert that the same evidence that supports an inference of assumption of risk could also support an inference of momentary forgetfulness. The trial court concluded, and we agree, that there was insufficient evidence to support an instruction on momentary forgetfulness. To instruct on momentary forgetfulness, there must be evidence that the injured party voluntarily exposed himself to a dangerous situation of which he had previous knowledge, but momentarily forgot the danger. In a wrongful death case, unless the victim survives for a period of time to give his version of the mishap, there will be no direct evidence of the victim's state of mind at the time of the accident. *Cf. Keller, supra,* 360 N.W.2d at 506 (victim testified he was not thinking of the danger at the time of the accident). In this case, we have no statement by the victim, no circumstantial evidence suggesting that Erickson's attention was diverted when he placed himself in the position of danger, no evidence that he was upset or excited by something, nor any other evidence suggesting that Erickson was in any way distracted from the obvious and apparent danger surrounding him in the alleyway. An instruction on momentary forgetfulness would have left the jury to speculate, without support in the evidence, on

Erickson's possible forgetfulness of the danger at the time of the accident.

We have recently distinguished between an inference of fact and mere speculation. An inference is a process of reasoning by which a permissible fact is logically and reasonably drawn by the factfinder from facts already proved or admitted, whereas speculation is mere theorizing about a matter upon insufficient evidence. *State v. Haugen,* 449 N.W.2d 784, 788–789 (N.D. 1989). In this case, there was sufficient evidence from which the jury could infer the existence of all elements of assumption of risk. However, the jury would have been left to theorize, without basis in the evidence, whether Erickson momentarily forgot the danger.

We conclude that the trial court did not err in refusing to instruct on momentary forgetfulness.

## II. DUTY OF CARE

The Erickson children also assert that the trial court erred in refusing to give their requested instruction on duty of care. They do not assert that the trial court's instruction was an incorrect statement of the law, only that their more fact-specific instruction was better.

 Instructions need not be given in the specific language requested by a litigant. Instructions which fairly inform the jury of the applicable law are all that is required. *Matter of Estate of Knudsen,* 342 N.W.2d 387, 392 (N.D.1984).

 The court is to instruct the jury "only as to the law of the case." Rule 51, N.D.R.Civ.P.; *Intlehouse v. Rose,* 153 N.W.2d 810, 812 Syll. ¶ 5 (N.D.1967). Instructions which are too fact-specific may "single out and give undue prominence to particular portions of the evidence." *Killmer v. Duchscherer,* 72 N.W.2d 650, 660 (N.D.1955); *see also Intlehouse v. Rose, supra,* 153 N.W.2d at 815–816.

We conclude that the trial court did not err in refusing to give the requested duty of care instruction.

## III. JUROR MISCONDUCT

The Erickson children assert that juror misconduct occurred. They rely upon the affidavit of the jury foreman stating (1) that two jurors stated that "they did not want to vote against Schwans because they did not want to have to face them after trial," and (2) that the jurors were confused by the instructions and the special verdict form and that they intended that the children actually receive compensation.

■ Juror affidavits are not admissible to impeach the verdict except to show that extraneous prejudicial information was improperly brought to the jurors' attention, that an outside influence was improperly brought to bear upon a juror, or that the verdict was arrived at by chance. Rule 606(b), N.D.R.Ev.; Rule 59(b)(2), N.D.R. Civ.P.; *Andrews v. O'Hearn*, 387 N.W.2d 716, 719 (N.D.1986); *Mauch v. Manufacturers Sales & Service, Inc.*, 345 N.W.2d 338, 343 (N.D.1984).

■ The Erickson children assert that the two jurors' statements to the effect that they couldn't face the Schwans if they voted against them demonstrates outside influence. We disagree. There is no evidence that the Schwans threatened these jurors or otherwise sought to influence them in connection with this case. The jurors' ambiguous statements are at best evidence of the jurors' subjective thoughts during the deliberation process. They do not in any way show that an outside influence was brought to bear upon these jurors. Juror affidavits are also inadmissible to show that the jurors misconstrued or ignored the instructions, misconceived the legal consequences of their factual findings, misunderstood the ramifications of their answers to questions on a special verdict, or intended a different result. *Mauch, supra*, 345 N.W.2d at 343.

The foreman's affidavit was therefore inadmissible to establish juror misconduct.

## IV. SUFFICIENCY OF THE EVIDENCE

■ The Erickson children assert that the evidence was insufficient to support the verdict. This court will not invade the province of the jury to weigh evidence or to assess the credibility of witnesses. *Matter of Estate of Knudsen*, 342 N.W.2d 387, 392 (N.D.1984). We view the evidence in the light most favorable to the verdict and if there is substantial evidence to support the verdict we will not set it aside. *Matter of Estate of Knudsen, supra*, 342 N.W.2d at 392. We conclude that there was substantial evidence to support the verdict in this case.

The judgment of the district court is affirmed.

ERICKSTAD, C.J., and MESCHKE, GIERKE and VANDE WALLE, JJ., concur.